State ex rel. Bowe vs. Board of Education of the City of Fond du Lac.

THE STATE ex rel. BOWE, Appellant, vs. THE BOARD OF EDU-
CATION OF THE CITY OF FOND DU LAC, Respondent.

*April 9 — April 28, 1885.*

*Public schools: Reasonable regulations: Improper suspension: Manda-
mus to compel reinstatement: Parties.*

1. A regulation that each scholar, when returning to school after re-
cess, shall bring into the school-room a stick of wood for the fire,
is not "needful" for the government, good order, and efficiency of
the schools, and a scholar cannot be suspended for a refusal to
comply with such regulation.
2. The parent of a child wrongfully suspended from a public school
may proceed directly, by *mandamus*, against the board of educa-
tion which has the power and whose duty it is to reinstate the
child.

APPEAL from the Circuit Court for *Fond du Lac* County.

This was a proceeding by *mandamus* to compel the board
of education to reinstate the son of the relator in one of the
public schools of the city of Fond du Lac. The substance
of the return to the alternative writ will be found in the
opinion. The relator demurred to the return, and appealed
from an order overruling the demurrer.

*Geo. E. Sutherland*, for the appellant.

*P. H. Martin*, for the respondent, contended, *inter alia*,

that the rule was a reasonable one, and that the request of the teacher was one which, from the relations existing between teacher and pupil, without regard to the rule, the pupil was bound to obey. *State ex rel. Burpee v. Burton,* 45 Wis. 155; *Comm. v. Seed,* 5 Pa. L. J. Rep. 78; *Lander v. Seaver,* 32 Vt. 114; *Scott v. School Dist.* 46 id. 452; *Burdick v. Babcock,* 31 Iowa, 562; *Sewell v. Board,* 29 Ohio St. 89; *Spiller v. Woburn,* 12 Allen, 127; *Ferriter v. Tyler,* 48 Vt. 444; *Norton v. Tinmouth,* 37 id. 521.

COLE, C. J.   One can but express surprise that any intelligent teacher or intelligent board of education should suffer such a case as this to reach the courts.   The fact that it is here can only be accounted for on the ground that either the teacher or the board of education, perhaps both, have sadly misconceived their powers and duties, or have been actuated by some improper motive in excluding the relator's son from the public school.   The reasons for excluding him, as stated in the return, are, in substance, that the board of education — which is clothed with power to make rules and regulations for the government and organization of schools, for the reception and instruction of pupils, and for the preservation of good order and discipline in schools — did, long prior to the supposed grievance of the relator, enact certain rules, among which were these: " Rule 27. Any pupil guilty of disobedience to a teacher, or of gross misconduct, may be suspended by the principal."   "Rule 29. Any pupil suspended from school by virtue of any one of the foregoing rules can be readmitted only by bringing a written permit from the superintendent."

It is then stated that for many years there had existed in all the schools of the city of Fond du Lac, except the high school, a regulation known and approved by the board, whereby the teachers of the several schools have been authorized to and have required each pupil of sufficient age

and bodily strength, upon returning from the play-ground at recess, to bring with him a stick of wood fitted for stove use, to supply the stoves with fuel in the rooms occupied by such pupils, and to keep the rooms warm and comfortable. It is for a refusal of the relator's son to conform to this regulation that he was suspended.

It is further stated that the refusal of the boy was in presence of the scholars of the school, and was without cause other than to cause a breach of the order and direction of the teacher and principal, and in defiance of their authority, and was calculated to bring such authority into contempt, etc. On account of the disobedience of the pupil to conform to this regulation, to sustain his authority over and discipline in the school, the principal and teacher caused the pupil to be suspended, and notice thereof in writing to be given to the relator and superintendent.

In contesting the sufficiency of this return, the learned counsel for the relator insists that the rule or regulation requiring pupils to bring up wood for use in the school-room is unreasonable, and not binding upon any pupil who does not wish to comply with it; that it does not relate to a subject which concerns the education of pupils or discipline in the schools; therefore that the board had no right to adopt and enforce it to the extent of excluding a pupil who did not conform to it. He says our public schools are organized and maintained for the education and improvement of children in learning; that no rule is proper which does not conduce to these ends,— that does not in some way promote the good order or government of the schools: secure the decorum and quiet in the school-room which are essential for advantageous instruction and discipline. Consequently any rule or regulation which has for its object anything outside of the instruction of the pupil — the order requisite for instruction — is beyond the province of the board of education to adopt. The requirement that school children

should bring up wood, when not by way of punishment or discipline for misconduct, has nothing to do with the education of the child. It is nothing but manual labor, pure and simple, and has no relation to mental development. If a child can be compelled to bring up wood, he can be made to saw and split it before it is brought up; he can be compelled to bring it to the school-yard and throw it in the basement; can be made to clear the sidewalk of snow, wash the windows, or do any other menial work about the school-house and ground.

It seems to us difficult to escape the force of this argument. School boards and boards of education have important duties to discharge, and we have no disposition, as our decisions show (*Morrow v. Wood*, 35 Wis. 59; *State ex rel. Burpee v. Burton*, 45 Wis. 150), to circumscribe their powers in too narrow a compass. The statute clothes them with power to make all needful rules for the government of the schools established within their respective jurisdiction, and to suspend any pupil from the privileges of the school for non-compliance with the rules established by them, or by the teacher with their consent. Sec. 439, R. S.; Laws of 1883, p. 426, ch. 152, subch. 15, sec. 10. While from the necessity of the case much discretion must be left to these boards as to the nature of the rules which are prescribed, yet it cannot fairly be claimed that the boards are uncontrolled in the exercise of their discretion and judgment upon the subject. The rules and regulations made must be reasonable and proper, or, in the language of the statute, "*needful*," for the government, good order, and efficiency of the schools,— such as will best advance the pupils in their studies, tend to their education and mental improvement, and promote their interest and welfare. But the rules and regulations must relate to these objects. The boards are not at liberty to adopt rules relating to other subjects according to their humor or fancy, and make a disobedience of such

a rule by a pupil cause for his suspension or expulsion. We therefore think the rule or regulation requiring the pupil to bring up wood for use in the school-room was one which the board had no right to make and enforce.

But if we are wrong in this view, the relation shows a most satisfactory excuse on the part of the boy for failing to conform to it. It is set forth therein that the relator saw the teacher, Mr. Bond, about the 13th of February, 1884, and informed him that his son was physically weak, unable to carry up wood, and requested the teacher to excuse the boy from performing that work. Notwithstanding this request the teacher required the boy to bring up wood. Again the relator saw Mr. Bond, explained to him the condition of his son's health, that he had had diphtheria, and had a chronic difficulty in his side, which was aggravated by his carrying up wood, and asked that his son be excused therefrom. Still Mr. Bond insisted that the boy should obey the rule and bring up wood, and directed him to do so.. The relator saw Mr. Bond the third time, and informed him that he had instructed his son not to carry up wood, and that if he (Bond) should order him so to do, he must expect the boy to refuse. On the 26th of February, 1884, when the teacher again required the boy to bring up wood, the boy. told him he could not, under his father's orders. Thereupon the boy was supended from school. The great forbearance and good nature manifested by the father in this case are not usual with parents, still they are commendable. One would naturally suppose if " the element of mildness and sweet reasonableness " had been very strongly at work in the spirit of Mr. Bond, he would have yielded to the request of the father, thus three times made. But obedience must be rendered to the rule, *ruat cœlum*.

This is not a case of a conflict between the authority of the parent and the board or teacher in a matter where such board or teacher has a right to prescribe a rule for the

obedience of a pupil.  If the case involved that question it would be different.

The relator made some efforts to get his son reinstated in school under rule 29.  We shall not notice the steps taken by him for the purpose, holding as we do that the boy was wrongfully suspended in the first instance.

A question was made as to whether the relator should not have proceeded against the city superintendent, and not against the board of education.  The superintendent is elected by the board, and is under its control.  Sec. 2, subch. 3, of the city charter (ch. 152, Laws of 1883).  The board ,makes the rules for the government of the schools.  Subch. 15, Charter.  The board certainly had power to reinstate the relator's son, and it was its duty to do so under the circumstances.

The return is defective in law for the reasons given, and the demurrer to it should have been sustained.

*By the Court.*— The order of the circuit court is reversed, and the cause remanded for further proceedings according to law.