HARLEY, Respondent, vs. LINDEMANN and others, Appellants.

*October 11—November 7, 1906.*

*Public schools: Illegal change in text books: Equity: Injunction: Adequate remedy by* mandamus.

1. A motion to vacate a temporary injunction challenges the sufficiency of the complaint.
2. If a school board makes an illegal change in text books, *mandamus* will lie to compel recognition of the right of pupils to use the books illegally discarded.
3. An injunction should not be granted at the suit of a parent of school children to prevent a threatened illegal change in text books, since if such change be made it. will work no irreparable injury and the remedy by *mandamus* will be adequate.

APPEAL from an order of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Reversed.*

This is an appeal from an order continuing a temporary injunction. The action was equitable to restrain persons as-

suming to act as the board of school directors of the city of
Milwaukee from carrying out a threatened purpose to make
a change in text books used in the schools of such city.

The following is a fair synopsis of the amended verified
complaint which is the foundation of the order appealed
from: Plaintiff complains on behalf of himself and others
similarly situated.    He is a citizen and taxpayer of the city
of Milwaukee and a patron of its public schools, having three
children attending the same.    The defendants claim to have
been appointed and assume to act as members of the school
board of said city, and threaten as such board to abolish the
use of certain text books in use in the public schools of such
city and to adopt others in place thereof.    Said defendants
for their authority to act as members of such board refer only
to ch. 273, Laws of 1905, which in fact confers no authority
upon them.    Such chapter purports to create a board of
school directors for said city and provides that a committee
consisting of the president of the board and four members
selected by him shall examine, certify, employ, classify, trans-
fer, and promote teachers, subject to amendment, rejection,
or confirmation by the board; that a committee also consist-
ing of the president and four members selected by him shall
be appointed to select and determine the courses of study and
text books to be used, subject to approval by the board, as in
case of teachers.    Said chapter further purports to confer
upon said board power to make by-laws for its own govern-
ment and the government of the schools of said city, and also
the usual powers exercised by similar boards.    Prior to No-
vember 1, 1905, the defendants adopted a rule that the two
committees mentioned should consist of the same persons;
also a rule of procedure for the change or adoption of text
books, to the effect that the superintendent of schools shall,
prior to March 1st in each year, receive such suggestions as
may be offered respecting such subject and by May 15th
thereafter submit to the committee on courses of instruction

the text books and list of changes which he deems advisable to have considered with his reasons therefor; that at the regular meeting in April thereafter such committee shall report to the board a list of subjects out of the list submitted by the superintendent regarding which the committee will consider the change or adoption of text books, such report to serve as a notice to the publishers of such books enabling them, if they wish, to submit samples and prices; and that at the regular meeting in May thereafter the committee shall report to the board such changes or adoptions out of such list as may be recommended by the superintendent and approved by the committee, which report shall be acted upon finally by the board at the regular meeting in June thereafter.    Plaintiff is informed and believes that the defendants threaten to, and unless restrained by the court will, abolish Harper's Readers in the grades numbered from two to five inclusive in such school and substitute therefor Stepping Stones to Literature, books 1 to 6 inclusive, which are more expensive though inferior to said Harper's Readers.    By reason of the premises defendants purpose without any authority of law to force the patrons of said school to purchase more expensive and less suitable books than those in use, though propositions have been made to furnish cheaper and better books than the said Stepping Stones to Literature in case Harper's Readers are to be abolished.    Such propositions included offers to furnish such superior books in place of Harper's Readers free of cost, while the proposition of the board is to compel the surrendering of Harper's Readers and payment of eighteen cents to thirty-five cents per copy for the new books, to the injury of the patrons of the schools in the aggregate of about $10,000, and to their irreparable injury.    When the board makes a change in text books the law prohibits any subsequent change in that particular regard under five years, so that defendants, in case they shall be permitted to proceed, will impose on the patrons of the schools of said city the burden of

purchasing from time to time the new books for a period of five years. The defendants in fact have no lawful authority to do the act so threatened. Plaintiff and those similarly situated are remediless to prevent the doing of such threatened act and the subsequent loss to them, unless a court of equity will interfere in their behalf.

There was a proper prayer for permanent relief and for an *interim* injunction restraining defendants from doing the alleged threatened act during the pendency of the litigation. The temporary restraining order was granted. The defendants by verified amended answer admitted that they claimed to be members of the board of school directors of the city of Milwaukee, deriving their authority from ch. 273, Laws of 1905, and alleged that they were in fact duly qualified members of the school board of said city and as such had full authority to make the change in text books sought to be prevented; that so far as they had gone in the matter they had proceeded in due course under such law and the rules of the board adopted pursuant thereto; that the recommendations of the committee to make the change in text books mentioned in the complaint was pending before the board; that until action thereon by such board defendants could not state whether Harper's Readers would be displaced by Stepping Stones to Literature, but that whatever the board should finally do in the matter would be pursuant to and justified by such chapter. The answer contained appropriate allegations putting in issue that part of the complaint charging the committee of the board in considering the matter of changing text books with indiscreet conduct, and allegations to the effect that all proceedings in respect to the matter were justified by said law of 1905.

At the outset on a verified complaint a temporary injunction was granted. Upon the amended pleadings and affidavits a motion made by defendants for an order vacating such temporary injunction was considered and denied, the court

rendering an opinion in the matter showing that as it viewed the same it turned on the constitutionality of ch. 273, Laws of 1905. Such opinion was to the effect that the constitutionality of the act was challenged, *first,* because it was a private law attempting to amend the charter of the city of Milwaukee; *second,* because it violated the uniformity of the school system contrary to the constitution; *third,* because it imposed upon circuit judges nonjudicial duties. The court disapproved of the second and third grounds but expressed an opinion that the first ground was well taken, but nevertheless overruled plaintiff's contention in that regard and refused to declare the act unconstitutional and continued the temporary injunction upon the theory that there was a probability that plaintiff might finally recover, in which event, without the temporary restraining order being left in force, the judgment would be ineffectual, and that to continue the same during the litigation would not injure defendants or the public. From the order accordingly entered refusing to vacate the temporary injunctional order defendants appealed.

For the appellants there were briefs by *John T. Kelly,* city attorney, and *Benjamin Poss,* assistant city attorney, and *James G. Jenkins,* of counsel, and the cause was argued orally by *Mr. Kelly* and *Mr. Poss.*

For the respondent there was a brief by *A. C. Umbreit,* attorney, and *Charles Quarles,* of counsel, and the cause was argued orally by *Mr. Umbreit.*

MARSHALL, J. The order complained of, as will be seen from the statement, was entered upon the theory that ch. 273, Laws of 1905, may be unconstitutional and that respondent may on that account finally obtain judgment as prayed for, and that without the *status quo* being preserved in the meantime the purpose of the litigation will nevertheless be defeated, to respondent's irreparable injury, while such preservation will not work any material damage to the public.

The motion to vacate the temporary injunction challenged the sufficiency of the complaint (*Judd v. Fox Lake,* 28 Wis. 583), so all questions in that regard are before us for consideration.

It is a cardinal principle in the administration of justice that a legislative enactment should not be adjudged void in any action unless the solution of the question in that regard is deemed necessary in order to reach a just conclusion in the cause. That rule, it seems, should be given all the force reasonably attributable thereto in this case, since the constitutional question considered by the trial court, and upon which counsel for respondent relies, has not been argued upon the opposite side. · Counsel for appellants insist that the facts alleged in the complaint afford no ground for the relief prayed for, even if the law of 1905 be invalid as claimed. So, as stated, they have declined to reply to counsel for respondent on the constitutional question.

Up to the time of the commencement of the action, as shown, no injury had been done to respondent. The most that is claimed is that a wrong was threatened and unless prevented by the court the threat would be carried out. So the purpose of the action is to guard against the mere danger of such threat being executed. The change in text books sought to be prevented, obviously, cannot occur till the school board shall have adopted the report of its committee recommending the same. There is no showing of facts in the complaint, nor can it be implied, that should such adoption occur plaintiff would not thereafter have ample opportunity by some appropriate action to prevent any injury to him. The situation is wholly unlike those where the issue of municipal bonds was threatened, which might go into the hands of innocent purchasers and in such hands be valid obligations, or there was a threatened improper diversion or disbursement of public money or disposal of public property, any of which threats would necessarily involve danger of irremediable pe-

cuniary loss to the taxpayers of the municipality. The following were cases involving such situations: *Peck v. School Dist. No. 4,* 21 Wis. 516; *Lawson v. Schnellen,* 33 Wis. 288; *Lynch v. E., La F. & M. R. Co.* 57 Wis. 430, 15 N. W. 743, 825; *Willard v. Comstock,* 58 Wis. 565, 17 N. W. 401; *Fowler v. Superior,* 85 Wis. 411, 54 N. W. 800; *Kyes v. St. Croix Co.* 108 Wis. 136, 83 N. W. 637. Here the threatened act if carried out would not involve any irreparable injury whatever to respondent unless he would be entirely without an adequate remedy for any wrong done to him in case of the action being illegal.

Counsel, fully recognizing that it was essential to a good complaint in the action to show that if the threatened act was not prevented it would occur not only to his injury but to his irreparable loss, alleged "plaintiff and those similarly situated have no adequate remedy at law in the premises and are helpless to prevent the great loss and expense" referred to in the complaint "unless a court of equity shall interfere to prevent same." Consistently with that, as we understand it, counsel conceded on the argument that unless the equitable remedy invoked when the action was commenced was necessary to plaintiff's protection, it was improperly invoked.

Obviously, the mere act of the board, should it approve the report of its committee as to making the change in text books recommended, would not injure respondent. The injury would come to him, if at all, when the determination of the board should be enforced by denying to his children the benefit of the public schools unless he complied with the new regulation, and he could then, as it seems, by a plain legal action of *mandamus* redress the wrong, fully, by compelling recognition of the right of his children to such benefits regardless of such regulation, as was done in *State ex rel. Adams v. Burdge,* 95 Wis. 390, 70 N. W. 347. There the relator's children had been denied school privileges except upon condition of their submitting to a regulation of the state board

·of health requiring applicants for such privileges to present
·certificates of vaccination.   The same principle was applied
in *State ex rel. Bowe v. Board of Ed.* 63 Wis. 234, 23 N. W.
102, and *State ex rel. Smith v. Board of Ed.* 96 Wis. 95, 71
N. W. 123.   In the former the court held as a general prin-
·ciple, as stated in the syllabus:

"The parent of a child wrongfully suspended from a pub-
lic school may proceed directly, by *mandamus,* against the
board of education which has the power and whose duty it is
to reinstate the child."

In the latter the wrongful exaction of a tuition fee by the
teacher and principal of the school as a condition of allowing
a pupil to remain in school, was remedied by a *mandamus*
action.   The following cases from other jurisdictions are to
the same effect: *State ex rel. Flowers v. Board of Ed.* 35 Ohio
St. 368; *State ex rel. Roberts v. School Directors,* 74 Mo. 21;
*Smith v. Directors,* 40 Iowa, 518; *Dove v. Independent
School Dist.* 41 Iowa, 688; *People ex rel. Workman v. Board
of Ed.* 18 Mich. 400; *Ward v. Flood,* 48 Cal. 36.   *State ex
rel. Flowers v. Board of Ed., supra,* seems to be directly in
point on the facts and principle involved as well.   There had
been an illegal change in text books determined upon and
put in execution.   The procedure leading up thereto was
very much the same as that detailed in the complaint in this
·case.   A *mandamus* action was thereupon commenced com-
pelling the board of education and the superintendent of
schools to allow the relator's child and all other pupils in the
·school to use the text books claimed to have been illegally dis-
carded.   The question of whether the relator invoked the
proper remedy was specially considered and decided in the
affirmative, the court, speaking by GILMORE, C. J., saying:

"The relator was a resident taxpayer of the city of Colum-
bus and of the school district, and was also the father of a
·child who was of school age, who was attending school in the
·city, and for whose use, in school, he had purchased and paid

for Harper's geographies . . . He had, therefore, a pecun--
iary, and also a parental, interest in having the public schools
of the district controlled and conducted in the manner pre-
scribed by the statute; and these interests are sufficient to.
enable him to maintain this proceeding."

The same remedy was resorted to, to reinstate a pupil ex-
cluded from the schools on the ground of color, the superin-
tendent of schools being proceeded against, in *Ward v. Flood,
supra;* and in *Smith v. Directors, supra,* the same remedy
was used for a like purpose. See, also, Merrill, Mandamus,
§ 115, and High, Extr. Leg. Rem. (3d ed.) § 332.

An examination of the authorities referred to shows very
clearly that in all cases where a child who is entitled to at-
tend the public schools is illegally excluded therefrom upon
any ground, or who has been received into such schools and
is nevertheless illegally deprived of his rights therein, the
parent or guardian of such child is clearly entitled to the le-
gal remedy by *mandamus* to redress the wrong.

It follows from the foregoing that,—admitting all the al-
legations in the complaint to be true as regards want of au--
thority of the defendants to do the alleged threatened act;
that such want of authority grows out of ch. 273, Laws of
1905, being unconstitutional; and that unless restrained by
the court they will adopt the report of the committee as to
changing text books and put their determination in force,—
instead of respondent and those similarly situated being, as
alleged, helpless to redress the wrong done to them, the legal
remedy by *mandamus* will be available for that purpose; will
afford a safe, speedy, and efficient remedy; and the use of it
under the circumstances will be in accordance with the uni-
form practice of this court and of courts generally.

So we have presented the question of whether, in case of a
mere threatened act of a public nature which in case it should
occur would injuriously affect taxpayers and citizens of the
municipality, but not irreparably, because of a plain legal,.

speedy, and adequate remedy to redress the wrong, the juris-
diction of equity should be usable to prevent the threat from
being carried out.    It seems that the decision must be in the
negative and that the question is thus ruled by several deci-
sions of this court, particularly *Judd v. Fox Lake*, 28 Wis.
583; *Gilkey v. Merrill*, 67 Wis. 459, 30 N. W. 733; and *Sage
v. Fifield*, 68 Wis. 546, 32 N. W. 629.    In the first case
cited, after stating the facts alleged showing the claim of the
plaintiff to be that there was merely an injury threatened,
which, should it occur, would be remediable, the court said:

"The complaint presents, therefore, the naked question,
whether under such circumstances the aid of equity can be
successfully invoked to declare in advance that certain acts
of public officers, proposed or threatened in the future to be
done, will, if performed, be illegal and void.    We are clearly
of the opinion that it cannot."

In the last case cited, which was a taxpayer's action to re-
strain a threatened injury, the court, speaking by Justice
TAYLOR, said:

"If the authorities of the municipality fraudulently squan-
der its property and assets the taxpayer is irreparably in-
jured, because it necessitates the collection of greater taxes
to pay the legitimate charges against the municipality; and
unless, therefore, the taxpayer can restrain the unlawful and
fraudulent disposition of such property of the municipality,
he is entirely remediless.    None of the cases in this court,
since the case of *Judd v. Fox Lake*, are in conflict with the
decision in that case.    The rule there laid down was ap-
proved and acted upon in the case of *Gilkey v. Merrill*, 67
Wis. 459, 30 N. W. 733.    We think that the circuit court
should have dissolved the injunction on the ground that the
complaint did not state facts sufficient to constitute an equita-
ble cause of action."

From what has been said we feel bound to hold that the
complaint fails to state any cause of action.    If any action
could be brought in equity at all it could not properly be com-
menced because of a mere threatened illegal act, which, if it

were to occur, would be readily remediable. This renders it unnecessary to examine the constitutional question so ably presented by counsel for respondent.

*By the Court.*—The order is reversed, and the cause remanded with directions to vacate the temporary injunctional order.