Mr. Gary J. Schuster District Attorney Door County Courthouse Post Office Box 670 Sturgeon Bay, Wisconsin 54235-0670
Dear Mr. Schuster:
You request my opinion as to whether school boards and school administrators may adopt and enforce various policies that restrict the circumstances under which a law enforcement (police) officer may interview a student at the school. Specifically, you mention policies which mandate some or all of the following: (1) that before a police officer can interview a student at the school, the student's parent or guardian must be notified, (2) that questioning cannot take place until the parent or guardian is present or waives the right to be present, (3) that the police officer must give the student certain warnings, regardless of whether the child is in custody, and (4) that a member of the school staff or administration must be present at the interview.
You indicate that the policies about which you are concerned contain some emergency exceptions to these requirements, but do not define emergency and that the policies do not distinguish between situations in which the student is a potential perpetrator, victim or witness or between situations in which the parents or school authorities or teachers are themselves potential suspects. You also indicate that you have purposely excluded from your opinion request questions regarding the ultimate admissibility of any statements obtained from the student on, for example, voluntariness grounds. You have also purposely excluded from *Page 127 
your opinion request situations in which the student is a suspected victim of physical or sexual abuse because that situation is specifically addressed in the statutes.
First, as you no doubt realize, the relationship between the public schools and law enforcement is an area that primarily should be characterized by cooperation and mutual respect. School officials, not unlike the general citizenry, often rely upon law enforcement to aid them in maintaining good order, protecting and ensuring the safety of all students and staff, and maintaining an environment in which education and learning can take place. Law enforcement officers, likewise, rely upon school officials, as they do the general citizenry, to cooperate and aid them in performing their duties and responsibilities.
Both the public schools and law enforcement are arms of the government, with broad responsibility and general power in their respective areas. School attendance is mandatory and the government regulation of the schools is pervasive. See generally
chs. 115-118, Stats. Indeed, section 118.01, Stats., provides:
 Educational goals and expectations. (1) PURPOSE. Public education is a fundamental responsibility of the state. The constitution vests in the state superintendent the supervision of public instruction and directs the legislature to provide for the establishment of district schools. The effective operation of the public schools is dependent upon a common understanding of what public schools should be and do. Establishing such goals and expectations is a necessary and proper complement to the state's financial contribution to education. Each school board should provide curriculum, course requirements and instruction consistent with the goals and expectations established under sub. (2). Parents and guardians of pupils enrolled in the school district share with the state and school board the responsibility for pupils meeting the goals and expectations under sub. (2).
Included among the educational goals defined by the Wisconsin Legislature in subsection (2) of section 118.01 is the following: *Page 128 
"(c) Citizenship. Each school board shall provide an instructional program designed to give pupils: 1. An understanding of the basic workings of all levels of government, including the duties and responsibilities of citizenship." The Wisconsin Legislature has also recognized that victims and witnesses of crime have a civic and moral duty to fully and voluntarily cooperate with law enforcement and prosecutorial agencies and that such citizen cooperation is important to state and local law enforcement efforts and the general effectiveness of the well being of the criminal justice system in the state.See see. 950.01, Stats. Within this broader context, and subject to specific statutory limitations, the school board has "the possession, care, control and management of the property and affairs of the school district." See. 120.12(1), Stats. Section120.13(1)(a) provides the school board may "[m]ake rules for the organization, gradation and government of the schools of the school district."[1]
These statutes have been held to impose upon the school board the "general duties of supervision, management and control over the operation of the school system . . . [and] empowers the board to exercise `general supervision over [the] schools' . . . ."State ex rel. Waldeck v. Goedken, 84 Wis.2d 408, 414-15,267 N.W.2d 362 (1978). It is well settled that a school may adopt policies that are reasonable and bear a rational relationship to the school's role in providing a public education, including policies for the advancement of education, discipline and the orderly operation of the schools. Smith v. School City of Hobart,811 F. Supp. 391, 396 (N.D. Ind. 1993). See, e.g., State ex rel.Bowe v. Board of Education, 63 Wis. 234, 23 N.W. 102 (1885); 8 Op. Att'y Gen. 110 (1919); 27 Op. Att'y Gen. 446 (1938). *Page 129 
Law enforcement officers have similarly broad duties and responsibilities within constitutional and statutory limits. Law enforcement officers may investigate claims of crime that are not sufficient to justify arrest and may investigate for the purpose of gathering information sufficient to arrest. Browne v. State,24 Wis.2d 491, 507, 129 N.W.2d 175, 131 N.W.2d 169 (1964). It is not unreasonable for law enforcement officers to seek to interview suspects and witnesses, for without that ability they cannot effectively perform their functions to prevent crime and apprehend those reasonably suspected of crime. The police also have the authority to request citizens to cooperate, although citizens certainly are not compelled to do so when asked. Statev. Tsukiyama, 525 P.2d 1099, 1104 (Haw. 1974).
You appear to accept the proposition that schools have authority to regulate the time in which police officers will be allowed to interview students on school property during the school day in order to minimize disruption in the school so that the school can focus on its primary educational responsibilities. I agree with your view. Whether that concern extends to requiring prior notice and opportunity to parents to be present at the interview, requiring that certain warnings be given, or requiring the presence of a member of the school staff or administration is a more difficult question to answer.
Arguably, a school board could conclude that allowing police to interview students absent parental consent or presence, absent certain warnings, or absent the presence of a staff person would identify the school, school officials, and teachers too closely with the juvenile justice and criminal law system, which would be counterproductive to the school's mission of providing a learning environment such that the state's children receive an adequate education. At the same time, however, an alternative solution to that problem might be to inform students, in the school handbook or through other means, that the school will permit police to interview students on the premises during school hours when the police deem it necessary to do so, that by so doing the school is *Page 130 
not expressing an opinion on whether or not a student should agree to be interviewed and that the student is not required by the school to participate or cooperate in such an interview.
Alternatively, an argument could be made that the school is operating within its in loco parentis relationship to the students when it seeks to protect students from police interviews. In situations concerning discipline and conduct of students, the school stands in loco parentis to the children in their charge. See L.L. v. Washington County Circuit Court,90 Wis.2d 585, 597, 280 N.W.2d 343 (Ct.App. 1979). That relationship may not extend to protect teachers or schools, however, or to permit teachers or schools to operate in areas outside of conduct and discipline. For example, in Guerrieri v.Tyson, 24 A.2d 468 (Pa.Super.Ct. 1942), the court explained that teachers who took it upon themselves to perform a procedure on a student designed to cure an infected finger were not exempt from liability for the physical injuries they caused under the inloco parentis doctrine. The court explained that doctrine is usually limited to areas of conduct and discipline and it does not delegate to the teacher or school authority to exercise lay judgment as a parent might.
Application of the in loco parentis doctrine here would also appear to be premised on an assumption that a parent has a right to be notified of a police interview with a student and has the right to refuse to permit such an interview to occur. Although the student certainly is free to decline to be interviewed, it is not clear that a parent has the right to make the choice for the student. The Children's Code in the Wisconsin Statutes does not provide that police must get permission from a parent before talking with a minor. In assessing the constitutional admissibility of a confession, the Wisconsin Supreme Court and the United States Supreme Court have recognized that the presence of a minor's parent during questioning is not a prerequisite to a voluntary confession or to the voluntariness of a waiver ofMiranda rights; it is only one factor to be considered under the totality of the circumstances. See Fare v. Michael C., 442 U.S. 707, *Page 131 
725-26 (1979); Theriault v. State, 66 Wis.2d 33, 47,223 N.W.2d 850 (1974). This at least suggests that there is no per se
bar to police interviewing a minor student without parental notification or permission, based on the parent-child relationship.
Although parental authority and responsibility to direct the upbringing, conduct, and education of a child is generally recognized, such authority is not unlimited. For example, inArnold v. Board of Education, 880 F.2d 305 (11th Cir. 1989), the court held that although a parent might have a federal constitutional cause of action if a school counselor coerced her child into obtaining an abortion and coerced the child into refraining from discussing the abortion with the parent, there was no constitutional mandate that school counselors notify parents of a minor who receives counseling regarding pregnancy. The court explained that parental authority does not give a parent the right to demand that their child's educational program be tailored to the preferences of the parents. Rather:
 [A] reasonable accommodation must be found by balancing the traditional rights of parents in the rearing of their children and the interest of the state in controlling public schools. While counseling intrudes somewhat on parental control over a child, we acknowledge the important role a guidance counselor plays as a trusted confidant of many students.
Arnold v. Board of Education, 880 F.2d at 314. See also Bergrenv. City of Milwaukee, 811 F.2d 1139, 1143-44 (7th Cir. 1987) (although a parent's right to custody of his minor child is constitutionally protected, the state can take a child into custody, if it has probable cause to believe he has committed a crime, and, acting in its role as parens patriae, it may interfere with the parent-child relationship to detain a child prior to trial to protect both the child and society from risk of pretrial crime).
Similarly, a police interview with a minor may intrude somewhat on the parent's control over the child, but law enforcement has a legitimate need to be able to seek the *Page 132 
cooperation of minors in investigating crime and in seeking to protect the community from further crime. This is especially evident when the student is believed to be a victim or witness. It may likewise be in the long term best interest of a child who is a suspect to be interviewed by police, even if that means that juvenile justice or criminal proceedings are ultimately brought against the child. Cf. In re R.W.S., 156 Wis.2d 526,457 N.W.2d 498 (Ct.App. 1990).
You raise the possibility that policies adopted by school districts which postpone questioning of a student until a parent or guardian is present, or waives the right to be present, may constitute obstruction of an officer, a violation of section946.41, or perhaps refusing to aid an officer, a violation of section 946.40. I do not believe a conviction under either section 946.41 or section 946.40 is a likely result.
A charge under section 946.41 will not lie unless the defendant subjectively intended to obstruct an investigation. "[T]he defendant's subjective intent must be ascertained, based on the totality of the circumstances, including what the defendant said or did, what the officer said or did, and any objective evidence which is available." State v. Lossman,118 Wis.2d 526, 543, 348 N.W.2d 159 (1984). I do not believe that the existence of school board policies which delay questioning until a parent is present, or waives that right, would per se
violate section 946.41.
A charge under section 946.40 will not lie unless the defendant fails to give aid to a police officer without reasonable excuse. See 74 Op. Att'y Gen. 123, 129 (1985). School board policies enacted in good faith seem to provide a reasonable excuse.
In summary, I find no statutory or common law authority which would necessarily prohibit school boards from adopting policies regarding access to schools and students on school grounds during school hours. Because I can find nothing which prohibits the adoption of such policies, I must conclude that school boards have discretion to adopt policies regarding how police interviews of students may be conducted, in order to *Page 133 
minimize the disruption of the student's normal school day, in order to minimize disruption to the normal functioning of the school, and in order to minimize the extent to which students may become distracted from their school work and classes. In designing such policies, the school board may consider that a police interview of a young child in the absence of the child's parents may be disruptive to that child whereas the interview of an older student in the absence of the student's parent would not. The school board may also consider that different policies may be appropriate depending on the purpose and subject matter of the interview. Although I realize that reasonable people could disagree over the wisdom of such policies, I am unable to conclude that they areper se prohibited or that school boards are wholly without authority to enact them.
Certainly, the preferable course is for school boards and local law enforcement to work together to jointly develop policies that will best serve the legitimate needs of both government arms, without unnecessarily intruding on those of the other. At a minimum, law enforcement should seek ways to perform their duties in a manner that does not routinely require them to interrupt a student's school day and risk disrupting school activities. And, at a minimum, school boards should recognize that it is part of their statutory charge to teach the responsibilities of good citizenship and their policies ought not to foster an uncooperative attitude toward law enforcement.
School boards and school administrators should not be deaf to the legitimate needs of law enforcement. Especially in situations where the parent or guardian is suspected of a crime and the student has information as a witness, where the student is a victim of a particularly sensitive crime such as sexual assault, or where a delay may result in flight of the suspect, destruction of evidence, the opportunity to cover up the crime, or an unnecessary threat to the community, school officials should be reluctant to adopt restrictive policies. In these cases the presence of a parent or guardian may make it more difficult to relate the *Page 134 
information necessary for efficient and effective investigation of the crime.
School officials have at least a moral responsibility to aid law enforcement in bringing criminals to justice. School officials should work with law enforcement officers to ensure that ongoing criminal investigations can be efficiently and effectively carried out despite these policies. In general, school officials should cooperate in making students available for interviews. On the other hand, law enforcement officers should be sensitive to a parent's concerns and the school board's policies.
Sincerely,
 James E. Doyle Attorney General
JED:SLW:dah
[1] Sections 120.12(1) and 120.13(1) apply to common and union school districts. Section 120.44 gives school boards of a unified school district the powers and duties of both a common school board and the annual meeting. Thus all school boards possess the powers to control access to school property. *Page 135