SAGE and others, Respondents, vs. THE TOWN OF FIFIELD and others, Appellants.

*March 22 — April 12, 1887.*

*(1) Equity: Injunction: Illegal tax. (2, 3) Highway taxes: Powers of electors and of supervisors.*

1. An injunction will not be granted, at the suit of tax-payers, to restrain town officers from issuing town or road orders or incurring expense in anticipation of the collection of a tax voted for highway purposes in excess of the amount authorized by law, or from placing such tax upon the tax roll. ·

2. Under sec. 1240, R. S., as amended by ch. 163, Laws of 1883, the electors of a town containing two congressional townships may direct the supervisors to assess as highway taxes any amount not exceeding fifteen mills on the dollar of the valuation of property in the town, provided such amount does not exceed $2,000 and seven mills on the dollar of such valuation.

3. In such a town it had been decided to collect the highway taxes in money. The valuation of property exceeded $500,000. The electors voted to raise a highway tax of $5,000. *Held*, that if it was necessary thereafter for the supervisors to direct the assessment of so many mills on the dollar as would make such sum of $5,000, they might do so by directing that amount to be apportioned upon the assessment roll.

APPEAL from the Circuit Court for *Price* County.

· The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action is brought by the plaintiffs, owners of real estate subject to taxation in the town of *Fifield*, to have it adjudged by the court that a vote of the electors of said town, at the annual town meeting in said town, on the first· Tuesday of April, 1886, to raise $5,000 as a road tax in said town for the year 1886, is void as to the sum of $3,000, and to restrain the supervisors of said town from incurring any expense, auditing any bills, or issuing any orders on the strength of said vote to raise $5,000 for such road purposes

for the year 1886, in excess of $2,000, and to restrain the chairman and clerk from signing any orders on the road fund of said town, or in anticipation of the levy of said $5,000, in excess of the sum of $2,000. The material allegations of the complaint, after the formal parts thereof, are that the plaintiffs are large owners of real estate in said town subject to taxation; that said town of *Fifield* contains more than two congressional townships; that, by reason thereof, the town has no authority to levy upon the taxable property thereof, to be raised in money, exclusive of the mill tax, any sum in excess of $2,000; that, at the town meeting in said town in 1886, the electors of said town voted to raise for highway purposes, to be collected in money from the taxable property of said town, the sum of $5,000; that said vote of the electors was illegal and void as to the excess over $2,000. The complaint then alleges that the supervisors of said town intend to and will, unless restrained by the court, issue town or road orders in anticipation of the levy and collection of said sum of $5,000; that there is no money in the treasury of said town to pay road or highway orders, and no money whatever belonging to the highway fund; and that the plaintiffs are informed and believe that said supervisors intend to proceed with road work, and incur expense on the strength of said vote, to the full amount of said sum; that the town clerk of said town intends to, and unless restrained by the court will, place said sum of $5,000 in the tax roll for collection, and will extend the same proportionately as a tax upon the real estate and personal property of said town. This action was commenced on the 4th day of May, 1886.

To the complaint the appellants answered, admitting that the plaintiffs owned taxable real estate in said town; that said town was duly organized, and comprised more than two congressional townships; that the persons named as defendants in the complaint were the supervisors and town

clerk of said town; also admitting the corporate character of the plaintiffs. The defendants answered further as follows: "The defendants, further answering, and for a defense to said complaint, allege that heretofore, and at the annual town meeting held in and for defendant town of *Fifield* for the year 1881, the electors of said town, then and there assembled, voted upon the question of collecting the highway taxes in said town in money, and did then and there decide to collect such taxes in money, by voting in the affirmative upon the following motion, to wit: 'Moved and seconded that the road tax hereafter be collected in money, as all other tax is, until this motion is rescinded;' that said motion, by the vote of said electors, was carried at said meeting, and by the adoption thereof it was decided to collect the highway taxes in money; that said vote has never been rescinded, and that the highway taxes for that year and ever since have been collected in money and at the same time and in the same manner as other town taxes, and as a substitute for and in lieu of any and all other taxes for highway purposes, including the mill tax, so called; that pursuant to said vote so passed, the electors of said town, assembled at the annual town meeting for the year 1886, voted to raise the sum of $5,000 for highway purposes; and that the said sum does not exceed the limitations now prescribed by law. Further answering, defendants deny each and every material allegation in said complaint contained, not hereinbefore specifically admitted, explained, or denied. Wherefore the defendants demand judgment against the plaintiffs for their costs and disbursements in this action."

A temporary injunction was issued on the *ex parte* application of the plaintiffs. After filing the answer, the defendants moved to dissolve the injunction. This motion was made on the pleadings and a certified statement of the aggregate valuation of the taxable property in said town. This statement shows that the value of the taxable property

in said town for the year 1885 was $516,815.77.    The motion was heard by the circuit court, and denied, and from the order denying the motion to dissolve said injunction the defendants appeal to this court.

The cause was submitted for the appellants on the brief of *M. Barry.*

For the respondents there was a brief by *Marshall & Jenkins,* and oral argument by *Mr. Jenkins.*    To the point that authority to tax must be derived from some statute, they cited *Minot v. West Roxbury,* 112 Mass. 1; *Wahlschlager v. Liberty,* 23 Wis. 362.    The electors of a town have no authority, either by express statute or by judicial construction of any statute, to vote a highway tax exceeding $2,000, but any amount in excess of that sum must be assessed as a mill-tax by the supervisors.    Secs. 1239, 1240, R. S., as amended by ch. 163, Laws of 1883.

TAYLOR, J.    The appellants insist that the circuit court erred in refusing to dissolve the temporary injunction — (1) because the complaint does not state facts which, if admitted to be true, would justify the court in granting the relief prayed for in the complaint, even if it were admitted that the electors of said town had no authority to vote a road tax upon the taxable property of said town exceeding the sum of $2,000; and (2) because the answers of the appellants show clearly that there was no intention on the part of the defendants to levy or collect a road tax in said town for the year 1886 in excess of the amount authorized by the laws of the state.

It seems to us that, unless we overrule the case of *Judd v. Fox Lake,* 28 Wis. 583, we must hold that the plaintiffs have not in their complaint stated facts sufficient to entitle them to equitable relief.    In that case the complaint alleged that the electors of the town illegally voted to raise a tax of $500 upon the taxable property of the town for the pur-

pose of graveling a street within the village of Fox Lake, and further alleged that the officers of the town intended and threatened to proceed to gravel said street in pursuance of said vote, and to expend thereon the said sum of $500 at the cost and expense of the tax-payers of the town of Fox Lake, and to draw upon and sign orders on the town treasurer for the payment of the said $500, and take any steps necessary and do any official act in furtherance thereof, etc.; that they threaten and intend to insert, or cause to be inserted, the said sum of $500 in the tax roll of said town, etc. The relief prayed in said complaint was that the defendant be enjoined from carrying said resolution into effect, and from doing any work, or expending any money, or certifying, assessing, or levying any tax, under said resolution, and in pursuance or in furtherance thereof, and that said resolution and the proceedings therein may be declared null and void, and further praying for a perpetual injunction, etc. An injunction had been issued in that case, as in the case at bar, and the defendants moved to dissolve the injunction upon a demurrer to the complaint and upon affidavits denying some of the statements of the complaint. The injunction was dissolved, and the plaintiffs appealed to this court. Upon such appeal this court affirmed the order. Some of the facts stated as appearing in said case are taken from the printed case therein, and do not appear in the report of the case. Chief Justice DIXON, in delivering the opinion of the court, says: " The motion here being equivalent to a demurrer to the complaint for want of equity or want of jurisdiction, the question presented is whether the complaint states any sufficient ground for equitable cognizance or for relief by the writ of injunction." After citing and commenting upon the cases of *Peck v. School Dist.* 21 Wis. 516, and *Whiting v. S. & F. du L. R. Co.* 25 Wis. 167, the learned chief justice says:

" The case differs materially from all these. It is not the

case of an apparently valid contract entered into by the officers of the corporation, but which is in reality invalid by reason of some extrinsic defect; not one of the impending unauthorized execution and delivery by the officers of negotiable paper which, in the hands of a holder for value without notice, will become valid and obligatory against the corporation; and not one where any apparent lien has been created or cloud exists upon the title to real estate. It is, supposing the resolution of the voters in town meeting to have been unauthorized and the proposed tax illegal, at most a mere anticipated or threatened invasion of the legal rights of the plaintiffs, which as yet has ripened into nothing injurious or detrimental to them at all, and perchance may never do so, but which, if it ever should, would not in its nature be irreparable, but might be redressed by the ordinary processes known to courts of law and equity. Should the officers of the town attempt to carry the resolution into effect, and assess a tax wholly unauthorized and illegal, as the complaint charges, the plaintiffs will have their action at law to recover back the money if paid under protest or on levy or distress of personal property; and if the same be extended against the real estate, they will also have their suit in equity to remove the supposed lien and cloud from their title. The complaint presents, therefore, the naked question, whether under such circumstances the aid of equity can be successfully invoked to declare in advance that certain acts of public officers, proposed or threatened in the future to be done, will, if performed, be illegal and void. We are clearly of opinion that it cannot."

I have quoted at length from the opinion in the case above cited, because it seems to dispose of one of the main questions arising in the case at bar.

The cases of *Lawson v. Schnellen*, 33 Wis. 288; *Phillips v. Albany*, 28 Wis. 340; *Lynch v. E., L. F. & M. R. Co.* 57 Wis. 430,—are all cases where the towns were about ille-

gally to issue negotiable bonds which would be good in the hands of *bona fide* purchasers, and come within the rule stated in *Whiting v. S. & F. du L. R. Co. supra.* The case of *Nevil v. Clifford*, 55 Wis. 161, was sustained upon the allegations of fraud and collusion between the plaintiff in the judgment and the officers of the district, and it was doubtful whether the tax-payers could, in an action to avoid the tax levied to pay such judgment, attack the validity of the same. See pages 170 and 171 of report. The case of *Willard v. Comstock*, 58 Wis. 565, was an action to restrain the county officers from fraudulently and illegally appropriating the property of the county, and the action was sustained on the ground that the tax-payer had no other adequate remedy. If the authorities of the municipality fraudulently squander its property and assets, the tax-payer is irreparably injured, because it necessitates the collection of greater taxes to pay the legitimate charges against the municipality; and unless, therefore, the tax-payer can restrain the unlawful and fraudulent disposition of such property of the municipality, he is entirely remediless. None of the cases in this court, since the case of *Judd v. Fox Lake*, are in conflict with the decision in that case. The rule there laid down was approved and acted upon in the case of *Gilkey v. Merrill*, 67 Wis. 459. We think the circuit court should have dissolved the injunction on the ground that the complaint did not state facts sufficient to constitute an equitable cause of action.

We are also of the opinion that the answer of the defendants shows that there had been no substantial violation of the law in voting $5,000 road taxes on the town. The laws in force regulating the assessment and collection of highway taxes in 1886 are subd. 9, sec. 776, and secs. 1239, 1240, R. S. 1878, as amended by ch. 163, Laws of 1883. By sec. 1240, as amended by ch. 163, Laws of 1883, the board of supervisors and the electors of the town had the power to

levy and assess upon the taxable property of the town of *Fi-field* the sum of $2,000, and, in addition thereto, the further sum of seven mills upon the assessed valuation of the property of said town. The assessed value of the property of said town was over $500,000. The limit of the authority of the electors and supervisors combined to raise road taxes in said town, under any reasonable construction of the statute, would therefore exceed the sum of $5,000, viz., $2,000 voted by the town, and seven mills by the supervisors. But it is alleged by the learned counsel for the respondents that the power of the electors to vote highway taxes in said town is limited, by the proviso to said sec. 1240, to the sum of $2,000, and that any additional taxes for road purposes must be fixed and determined by the board of supervisors, and not by the electors. This is not strictly true, as the same section says the supervisors *shall* assess any amount of taxes on the property of said town, not exceeding fifteen mills on the dollar, which shall be ordered to be assessed at the next preceding town meeting. Under said sec. 1240 as amended, the electors of the town had the power to vote $2,000 as a gross sum upon the property of said town, and, in addition, the supervisors had the power to levy the sum of seven mills on the dollar valuation, making in all a sum exceeding $5,000; or, according to the construction given to these statutes by Judge BUNN in the case of *Nelson Lumber Co. v. Loraine*, 24 Fed. Rep. 456, the electors might have directed the board of supervisors to levy upon the taxable property of said town so many mills, in excess of the seven mills which they were authorized to levy without any direction, as would raise a tax not exceeding the sum of $2,000 over and above what would be raised by the seven-mill tax. In either event, therefore, there was power to collect over $5,000 road taxes in said town.

Giving a construction to these statutes most favorable to

the tax-payer, the limit of taxation for road purposes in said town exceeded the sum of $5,000. Subd. 9, sec. 776, R. S., authorizes the electors at the town meeting to vote upon the question of collecting the highway taxes in money, "and in case it shall be decided by such vote to collect such taxes in money, such taxes for that year, and until such vote shall be rescinded, shall be collected and paid into the treasury at the same time and in the same manner as other town taxes." The answer in this case shows that the electors of said town had voted to collect the highway taxes in money, and that such vote was in full force when the electors voted to raise a highway tax of $5,000; and the answer also alleges that such vote of the electors upon the subject of highway taxes has, ever since the vote was passed to collect the highway taxes in money, been taken and considered as a substitute for and in lieu of any and all other taxes for highway purposes, including the mill tax, so called.

Under the law requiring the highway taxes to be collected in money as other taxes are collected, it seems to us very clear that the duty of the supervisors as to making out warrants for the collection of such taxes is clearly abrogated; and if any duty remains on them as a board in fixing the amount of taxes to be raised for that purpose in the town, it is simply their duty, in the absence of any vote of the electors on the subject, to declare the number of mills which shall be assessed on the valuation of the property of said town, and then the amount is to be carried out by the clerk upon the general assessment roll, and collected with the other taxes. In the case at bar the electors have indicated that all the highway taxes in said town for the year shall be $5,000. That sum the electors had the power to vote, with or without the approval of the board of supervisors, as the law gives the electors the right to direct the supervisors to raise fifteen mills on the dollar valuation,

provided such fifteen mills does not exceed the sum of $2,000 and seven mills on such valuation. In this case the $5,000 does not exceed such sum; and if it be technically necessary that the board should, after the vote of the electors, direct so many mills on the valuation to be raised as would make the sum of the $5,000 voted by the electors, they could do that by directing that amount to be apportioned upon the assessment roll; and, according to their answer, that was all that was intended to be done in this case.

There is no equity, therefore, in staying the officers of the town in collecting a tax which the law clearly authorizes, even though some of the formalities of the law may not have been complied with. For anything appearing in this case the officers would have complied with the law literally had they not been enjoined.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded with directions to that court to dissolve the injunction.