A. H. Stange Company, Respondent, vs. City of Merrill and another, Appellants.

*January 29—February 18, 1908.*

*Taxation: Illegal personal property tax: Equity: Injunctions: Payment of tax under protest: Duress: Real-estate taxes: Removal of cloud on title: Ad interim injunctions: Modification.*

1. An action in equity will not lie to restrain a municipal treasurer from collecting an illegal personal property tax.

2. The proper remedy for relief against an illegal personal property tax is to pay the same under protest pursuant to sec. 1164, Stats. (1898), or upon duress of personal property and then sue at law to recover back the money.

3. Actual seizure of property is not necessary to payment of a tax under protest. If the property is actually in duress, payment for the purpose of releasing the same is involuntary and affords a common-law remedy to recover back the money, if the tax is illegal. Payment to prevent a threatened or impending levy upon the property, protesting that it is made to prevent the enforcement of the tax and that it is claimed the same is illegal, is a sufficient payment under protest to satisfy sec. 1164, Stats. (1898).

4. Illegal taxes on realty may be paid under duress of personalty in case of a seizure to enforce the tax or paid to prevent an impending seizure to remove the cloud upon the title to the property created by the tax, protesting that the tax is illegal and that the remedy therefor by suit to recover back the money will be resorted to, and thereby such remedy be secured.

5. Notwithstanding opportunity for a person whose realty has been incumbered by the levy of an illegal tax thereon to pay the same under duress of property or under protest, as before indicated, and thereby secure a remedy as before suggested, he may, at his election, proceed in equity, while the tax roll is in the hands of the collector, to remove the cloud on his title and, incidentally, to prevent the collection of the tax.

6. In case of an equitable action in the circumstances before stated an interim injunction should be granted restraining proceedings to enforce the tax pending where it is reasonably probable that plaintiff will recover, the defendant being protected by a bond against being prejudiced by the restraint in case of its appearing that such protection may be necessary.

7. In case of a motion to vacate a temporary injunctional order and it clearly appearing that such order is proper in part and improper in part, it should be modified accordingly.

[Syllabus by Marshall, J.]

A. H. Stange Co. v. Merrill, 134 Wis. 514.

APPEAL from orders of the superior court of Lincoln county: ALMON A. HELMS, Judge. *One order affirmed; the other modified and affirmed.*

Action in equity to cancel alleged illegal taxes levied upon plaintiff's property, and to restrain the collection thereof. The complaint is substantially as follows: The assessor for the defendant city in 1906 assessed the real property in said city, other than that owned by plaintiff, at approximately seventy per cent. of the full value which ordinarily could be obtained therefor at private sale, and, except as to logs, timber, lumber, and other manufacturer's stock of the plaintiff, and like property owned by some others, he assessed the same upon substantially a like basis. On the 1st day of May, 1906, the real estate (describing the same) owned by plaintiff in the defendant city was of the value of not more than $35,500 on the basis of what could be obtained therefor ordinarily at private sale. Nevertheless the assessor assessed said real estate for said year at $76,000, knowing, or having good reason to know, that the same was not worth more than the amount aforesaid. Said real estate, upon the basis other real estate in said city was assessed at, should not have been valued at to exceed $25,350. On May 1, 1906, plaintiff owned personal property assessable in the city of *Merrill* of the value of not to exceed $188,175, which, on the basis other property was assessed at, should have been valued by the assessor at not to exceed $131,863, which fact the assessor either knew, or by the exercise of reasonable diligence might have known. The assessor intentionally and knowingly discriminated against the plaintiff in assessing its personal and real property, valuing the former at $282,005. The assessment roll with the valuation of plaintiff's property in accordance with the assessment, as aforesaid, was in due time placed before the board of review for its action thereon. Plaintiff appeared before such board and made a full disclosure under oath of all of its taxable property situated in said city and produced evidence substantially showing

conclusively that its real and personal property should have been assessed as before stated. The board disregarded such evidence and placed the value of plaintiff's real estate at $60,750 and the value of its personal property at $226,905 for logs, lumber, ties, poles and posts, not manufacturer's stock, and $15,048 for other personalty. The board included in the assessment 4,800,000 feet of lumber belonging to the plaintiff which on the 1st day of May, 1906, was located in the town of Scott, Lincoln county, Wisconsin. Said lumber consisted of manufacturer's stock and was taxable in said town of Scott, and was actually so taxed. The facts in regard to such property were fully established before the board of review, but it nevertheless wilfully included such lumber in the assessment of property to the plaintiff. On said 1st day of May plaintiff did not own any saw logs or similar property assessable in said city of *Merrill* that was not either manufacturer's or merchant's stock and held for manufacture at plaintiff's sawmill or for sale in the market, which fact it caused to appear to the board by clear and uncontradicted evidence. From the assessment roll, in due time the tax roll for said city for 1906 was made, there being extended as taxes against plaintiff's real estate $1,779.31 and against its personalty $7,083.21. The tax roll was duly delivered to the city treasurer with a warrant in due form for the collection of the taxes, and such collection, unless restrained by the court, will be enforced against the plaintiff by a levy upon and sale of its personal property. Plaintiff is ready and willing to pay its just proportion of the taxes levied in said city of *Merrill* for said year 1906, but is unable to ascertain the same without the aid of the court. The taxes extended against plaintiff's real estate, as indicated, are a lien thereon. Plaintiff has no adequate remedy at law for relief against the illegal taxes and will be irreparably injured unless the wrongs done and threatened to it can be dealt with by a court of equity.

There was a prayer for judgment declaring the assessment

of plaintiff's property for taxes of 1906 in said city and the taxes levied thereon illegal, and enjoining the defendant treasurer from collecting or returning the same as delinquent.

A temporary injunction was granted restraining the treasurer, pending the action, from collecting the alleged illegal taxes.

The defendants moved for an order dissolving the temporary injunction, and demurred to the complaint upon the ground of insufficiency. The demurrer was overruled. The temporary injunction was continued upon condition of plaintiff paying into court for the use of the defendant city $6,500.

*F. J. Smith,* attorney, and *John Barnes,* of counsel, for the appellants.

For the respondent there were briefs by *Reid, Smart & Curtis* and *John Van Hecke,* and oral argument by *Mr. A. H. Reid* and *Mr. Van Hecke.*

MARSHALL, J. Several questions are argued in the briefs of counsel which need not be discussed at any great length.

The case, viewed from the plain import of the complaint and conceded principles of law, comes down to a very narrow compass.

It is conceded the allegations of the complaint show that plaintiff's property was illegally and inequitably assessed, and consequently the taxes complained of are likewise illegal and inequitable.

It is further conceded that equity will not interfere to prevent the collection of an illegal personal property tax, but will leave the party aggrieved to the remedy afforded by sec. 1164, Stats. (1898), or his common-law remedy of paying the taxes under compulsion or protest and suing at law to recover back the money.

It is further conceded that since there is at best but one cause of action stated in the complaint, on the question of whether the same is a good cause of action, the fact that the purpose of the pleader was to secure relief from personal

property taxes as well as to remove the apparent lien of taxes on realty is immaterial. It is sufficient if the pretended cause of action is good as to the tax on the latter.

It must further be conceded that the complaint abundantly shows that respondent had personal property within the jurisdiction of the treasurer subject to seizure by him for payment of all the taxes in question, and that when the action was commenced he would have proceeded to make such seizure had the court not intervened to prevent it, and that the action was commenced in part to prevent the enforcement of the taxes.

It follows in any view, respondent, when the action was commenced, was competent to pay the taxes under protest pursuant to sec. 1164, Stats. (1898), and to obtain redress by an action at law to recover back the money.

Counsel is in error as to its being necessary in order to secure the benefit of sec. 1164 for the person aggrieved to wait until there is duress of property before making payment of the tax. Independently of the statute, if one pays a tax involuntarily, as to relieve his property from a levy existing thereon, or to prevent a threatened and impending levy, he may sue to recover back the tax. No statute was ever considered necessary for that purpose. *Matheson v. Mazomanie,* 20 Wis. 191; *Parcher v. Marathon Co.* 52 Wis. 388, 9 N. W. 23; *Ruggles v. Fond du Lac,* 53 Wis. 436, 10 N. W. 565; *Western Ranches v. Custer Co.* 89 Fed. 577. It will be observed that an action based on involuntary payment of an illegal tax was held to be maintainable in this state before the passage of the law of 1870, now embodied in the section referred to. The rule in respect to the matter, supported by many authorities, is thus stated in 27 Am. & Eng. Ency. of Law (2d ed.) 762:

"Where the payment is involuntary, protest is not necessary, in the absence of statute, to entitle the taxpayer to recover taxes paid under compulsion. And where illegal taxes

are voluntarily paid, a protest will not enable the taxpayer to recover, unless it is provided by statute that a recovery may be had where the payment was under protest."

That rule is fully discussed in *Western Ranches v. Custer Co., supra.*

The statute under consideration was doubtless passed for the very purpose of permitting a person aggrieved by illegal taxes assessed against his property to prevent undue prejudicial enforcement thereof, by paying the same under protest, notifying the officer at the time of such payment that he claims the taxes to be illegal and will seek his remedy to recover back the money. This court said in the first case decided after passage of the law in question:

"Should the officers of the town attempt to . . . assess a' tax. wholly unauthorized and illegal . . . the plaintiffs will ·have their action at law to recover back the money if paid under protest or on levy or distress of personal property. . . ." *Judd v. Fox Lake,* 28 Wis. 583, 587.

Thus recognizing the statutory right as distinct from the common-law right. That was repeated in *Sage v. Fifield,* 68 Wis. 546, 32 N. W. 629. So in any view there can be no question but that the respondent in this case was so circumstanced at the time the action was commenced that it might have paid the taxes complained of and thereby extinguished the cloud upon its realty, and maintained an action against the appellant city to recover back the money.

It follows that we have this plain proposition for decision: Notwithstanding the opportunity afforded to a property owner, as indicated in the foregoing, must he take advantage thereof or may he elect whether he will do so or invoke an equitable remedy to remove the illegal tax lien upon his realty?

The learned counsel for appellants invoke *Keystone L. Co. v. Pederson,* 93 Wis. 466, 67 N. W. 696, as conclusive in favor of appellants on that question. It seems to the court

the case is not in point.  It is merely to this effect: If a tax-
payer neglects to pay the taxes upon his realty or personalty
until seizure of the latter by the treasurer under his tax war-
rant, such property owner's only remedy to regain his prop-
erty and at the same time save his rights is to pay the tax
under protest as provided by sec. 1164 aforesaid, and then
sue at law to recover back the money.  Whether the property
owner may proceed in advance of any levy upon his property
to invoke equity jurisdiction to cancel the apparent lien upon
his real estate created by the illegal tax and in the meantime,
as an incident to the action in that regard, prevent pro-
ceedings on the part of the treasurer to levy upon his per-
sonalty for the purpose of collecting the tax and prevent
a return thereof as delinquent, is quite another question.

Counsel for appellants freely conceded on the oral argu-
ment that the court has often said equity will interfere to re-
move an illegal tax lien on realty before the return of the
tax as delinquent, but it is insisted that the court has not so
held where it appeared that there was personal property sub-
ject to seizure, affording the person taxed opportunity to take
advantage of the remedy afforded by sec. 1164.  That con-
tention rests on the supposition that opportunity for the
treasurer to seize personal property for a tax is essential to
payment under protest, which is incorrect.  There is nothing
in such section suggesting that it is confined to such a situa-
tion.  One may, as before indicated, pay his tax on realty
to prevent its being returned as delinquent, protesting that
he does so for such purpose and that he claims the tax to be
illegal and thereby secure a legal remedy to test the question
of the illegality.  So whether there was or was not personalty
subject to levy and upon which a levy was impending is im-
material.

The foregoing brings us to this: Was the removal of the
illegal tax lien on the realty created merely by extension of

the tax upon the tax roll and delivery of the roll to the treasurer with the proper warrant attached for the purpose of enforcing the tax, a proper subject for equitable cognizance?

This court has decided that in the affirmative on several occasions, the following being significant instances as applied to the facts of this case: *Hamilton v. Fond du Lac,* 25 Wis. 490; *Judd v. Fox Lake,* 28 Wis. 583; *Milwaukee I. Co. v. Hubbard,* 29 Wis. 51; *Sage v. Fifield,* 68 Wis. 546, 32 N. W. 629.

In the first case cited the action was brought before a return of the tax, as in this instance, and it was held that the action would lie. It should be noted that personal property, before the action was commenced, had been levied upon by the treasurer. The complaint was challenged for insufficiency. The action was sustained, the court holding that it was competent for equity to deal with the matter for the purpose of removing the cloud on the title to the realty.

In *Judd v. Fox Lake, supra,* the action was commenced as in this case, and it was sustained as one to remove a cloud on title to realty, the court saying, in substance, that in case of the assessment of an illegal tax upon realty the mere extension of it upon the tax roll affords the property owner the right to a suit in equity to remove the cloud upon his title.

In *Sage v. Fifield, supra,* language to the same effect was used.

In *Beaser v. Ashland,* 89 Wis. 28, 61 N. W. 77, the same doctrine was announced, and it was held, under facts similar to those here in respect to illegal action of the board of review, that, though the matter might be dealt with by a *certiorari* action, equity would interfere, since the right to the other remedy was not absolute. In that case the point was made that the action was prematurely brought; that there was no apparent cloud upon the plaintiff's title, because the tax proceedings had not proceeded so far as to make the tax a

lien on the realty, the tax roll not having been yet delivered to the city treasurer. To that the court answered:

"It is beyond question that a court of equity has jurisdiction, not only to set aside and cancel a proceeding that is already a cloud upon the plaintiff's title, but to enjoin one which is being prosecuted and will, if not prevented, result in creating a cloud upon his title. . . . A court of equity will . . . enjoin a proceeding in a case like the present, which will necessarily create such cloud. The tax or assessment, in an uncanceled state, has a tendency to throw a cloud over the title."

The law seems to be so firmly established, as indicated, that no further discussion would seem to be warranted.

On the question of whether the cause of action was complete without pleading an offer to pay the just amount of the tax charged to the property, little need be said. It is alleged that plaintiff was ready and willing to pay its just proportion of the tax as soon as the same should be ascertained, and that it was unable to determine the matter without judicial assistance. That is certainly sufficient.

Since a good cause of action, as we have seen, is stated in the complaint to remove the void tax lien upon the land, it was proper to preserve the *status quo* as to that branch of the case, pending the litigation, by a temporary injunction. It is, as a rule, competent for and the duty of a court of equity to so control a situation involved in litigation as to enable it to efficiently grant the relief sought by the final decree. An interim injunction, as in this case as to the realty, is very common and has been allowed almost as a matter of course in case of strong probability of recovery by the plaintiff, defendant being protected by a bond against probable injury by reason of the injunction, in case of plaintiff failing to recover, where such protection seemed necessary. The general rule on the subject laid down in *Valley I. Works Mfg. Co. v. Goodrick,* 103 Wis. 436, 78 N. W. 1096, applies to cases of this sort as to the realty. It will be seen

by an examination of such cases, to which reference has been made, that in every instance there was a temporary injunction.

Inasmuch as the action is not maintainable so far as the purpose thereof is to nullify taxes assessed upon personal property and to prevent the collection thereof, it is considered that on the motion to vacate the injunctional order it should have been so modified as not to apply to such taxes. It has recently been held that on such a motion it is error not to modify the order in so far as the same is clearly erroneous, even though it be right as regards refusal to vacate entirely. *Cawker v. Milwaukee,* 133 Wis. 29, 113 N. W. 419.

*By the Court.*—The order overruling the demurrer is affirmed. The injunctional order is so modified as not to apply to the personal property tax, and as so modified is affirmed. Costs in this court are allowed in appellants' favor to the extent of clerk's fees and taxable disbursements for printing. No costs are allowed in respondent's favor.