Philadelphia & Reading Coal & Iron Co. *v.* Tamaqua Borough School District, Appellant.

490

Argued April 21, 1931.  Before Frazer, C. J., Walling, Simpson, Kephart, Schaffer and Maxey, JJ.

*J. O. Ulrich,* for appellant.—It is the settled law of this State that a payment of taxes which are not due or of more than are due cannot be recovered where the payment was made without protest: Metzger's Petition, 8 Pa. D. & C. 481; McClure v. Greene Co., 11 Pa. D. & C. 256.

The provision of the act is silent as to the party by whom such excess shall be returned and since the entire provision is one entire sentence it must follow that the excess shall be returned by the person who collected the taxes.

The payment of the money, under the facts of the case, was voluntarily made by plaintiff so that he, for this reason, is not entitled to have it refunded: Allentown Boro. v. Saeger, 20 Pa. 421.

The provision in the Act of 1889, P. L. 37, referring to collection of taxes and their return under conditions applies only to cases where the taxes have been collected according to the methods prescribed by law, and if the plaintiff paid its taxes herein complained of, it paid the same voluntarily, without legal means having been resorted to, and hence cannot recover: Chew v. Phila., 14 Pa. Dist. 168; Washington Co. v. Plate Glass Co., 35 Pa. C. C. R. 673.

Defendant sets up as new matter that all school funds paid defendant by the collector of the Borough of Tamaqua for 1922 and 1923 were spent by the board of school directors of said defendant as provided by the School Code of Pennsylvania during each of such fiscal years, to which plaintiff failed to reply and therefore admits the same to be true and plaintiff has no legal right to recover any other money paid on account of such taxes as herein claimed: Allentown v. Saeger, 20 Pa. 421; Phila. v. Cook, 30 Pa. 56; Taylor v. Board of Health, 31 Pa. 73; Peebles v. Pittsburgh, 101 Pa. 304; De La Cuesta v. Ins. Co., 136 Pa. 62; Briegel v. Phila., 135 Pa. 451; Ford v. School Dist., 121 Pa. 543.

*John F. Whalen,* with him *George Ellis,* for appellee. —The Act of April 19, 1889, P. L. 37, applies to this case.

OPINION BY MR. JUSTICE KEPHART, May 11, 1931:

The county commissioners, as a board of tax revision, made an assessment of plaintiff's property in the Borough of Tamaqua at $3,596,188 for the triennial, beginning 1922. Plaintiff appealed, but meanwhile the commissioners certified the assessment to the school district of Tamaqua. On this valuation, it levied a tax of eight mills for the year 1922. Plaintiff successfully prosecuted its appeal from the assessment. Pending this appeal, which was not determined for more than two years, plaintiff, not wishing to pay the full levy of eight mills on the increased valuation or the increased levy of twenty mills for 1924, elected on its own account to pay an annual school tax, which in three years amounted to $26,290.05. The tax actually paid was computed on a probable valuation of approximately $1,000,000. Some months after the last of these payments was made, or February 5, 1925, the court below, reduced the assessment of plaintiff's property to $468,100. On this basis the school tax payable for these years was $17,742.30, an overpayment of $8,547.75.

Plaintiff, in 1928, sued to recover this excess in taxes. Defendant filed a counterclaim to recover from plaintiff the sum of $88,986.96, being the balance of school taxes levied for the three years on the high valuation which plaintiff failed to pay. The jury found for the plaintiff in the sum of $8,547.75, with interest from September 21, 1923. Defendant appeals.

Plaintiff's claim is based on the Act of April 19, 1889, P. L. 37, which requires that when an appeal is taken from an assessment of taxes the owner shall pay on the assessment made, regardless of the appeal. The act reads: "Provided, however, That the said appeal shall not prevent the collection of the taxes complained of,

but in case the same shall be reduced, then the excess shall be returned to the person or persons who shall have paid the same." While many assignments of error are presented, they will be disposed of in considering the several issues involved.

The constitutionality of the Act of 1889, P. L. 37, is no longer open to question; the proviso above quoted was held to be constitutional in Kaemmerling v. New Castle Twp. School Dist., 297 Pa. 44.

Appellant earnestly argues that whatever taxes were paid by plaintiff for the years 1922 and 1923, were voluntary payments on the basis of the valuation for the preceding year, 1921, which was the same as that for the triennial assessment of 1919. The payments were made by the plaintiff in the amounts given above to the collector for the Borough of Tamaqua. He gave the plaintiff receipts stating the payments were, in each case, on account of the school tax for the year in question, 1922 and 1923. In fact, defendant in its counterclaim stated the payments were on account of the taxes levied for 1922 and 1923. The fact that plaintiff set up its own valuation on which to compute the tax for these years would not make the payments any the less on account of the taxes due for those years. When a disputed assessment is finally determined it relates back to the time when under the law it was required to be made, and payment of taxes assessed during that period will be presumed to be made on such valuation. That the valuation was still on appeal and not finally determined is immaterial.

The fact that plaintiff paid the taxes to the collector of taxes instead of directly to the school district is of no consequence. He was merely their legal agent; the tax was levied by the school district, and the money finally reached their hands. The collector was merely discharging the functions of his office. The action was properly against the school district.

Appellant's contention that there can be no recovery of the excess, since the payments were admittedly voluntary, is of no merit. Undoubtedly, the well established rule in this State is that a voluntary payment of taxes to the public authorities, without any duress, threats, or misstatements on the part of the latter, or protest and notice of intention to reclaim on the part of the taxpayer, precludes subsequent recovery of any overpayment: Shenango Furnace Co. v. Fairfield Twp., 229 Pa. 357; McCrickart v. Pittsburgh, 88 Pa. 133. If the payment was a voluntary one, it may not be recovered unless a statute so provides: Investor's Realty Co. v. Harrisburg, 281 Pa. 200. But here the statute does so provide. It declares that in case an assessment of property shall, on appeal, be reduced, "then the excess shall be returned to the person or persons who shall have paid the same." Such a provision would be useless and would effect no change in the existing law if it were intended to apply only in case the payment of the excess tax has been previously compelled by a resort to legal methods, which, according to the appellant, is the only sense in which the tax can have been "collected." If such had been the procedure, plaintiff could have recovered the illegal excess without the aid of the statute. But, as remarked in the opinion of the lower court, the statute says nothing about compulsion or protest, and, since it provides that the taxes complained of may be collected while an appeal is pending, it is plain that any attempt to prevent collection would be unavailing. The statute in plain and unequivocal terms affords the taxpayer complete protection. If, pending appeal, the latter makes payment of the whole or any part of the levy in excess of the amount payable under a later readjusted assessment, the statute permits him to recover such excess. As stated in Quemahoning Coal Co. v. Jenner Twp., 83 Pa. Superior Ct. 577, 583, "an appeal to the common pleas is not a supersedeas and does not prevent either the levy or the collection of the tax. If the valuation is

reduced, the excess of taxes is returned to the person who paid them: Frick Coke Co. v. Mount Pleasant Twp., 222 Pa. 451."

Appellant further argues that when plaintiff made its voluntary payments on account of the levies, while the appeal was pending, it lost all rights under that appeal, and the original assessment then became the final valuation by which plaintiff was bound. This contention wholly disregards the effect of the proviso, which was inserted as a financial protection to the district in meeting current expenses and included a voluntary as well as a forced payment. It could not be urged that payment by force would waive the rights on appeal any more than would a voluntary payment destroy plaintiff's right to recover. Certainly there was no voluntary waiver, for plaintiff voluntarily paid only a small portion of the entire levy and could not more plainly have intended to assert its full right of recovery when the appeal should be decided.

Defendant also seeks to overthrow the judgment by the claim alleged to have been set up in defendant's counterclaim. The lower court disposed of the objection of plaintiff's failure to reply within fifteen days to certain new matter in its opinion by holding that the act declares only allegations of fact are admitted and not conclusions of law. See section 1, Act of April 22, 1929, P. L. 627. The new matter relied on by defendant was a statement of the legal grounds upon which the defense rested. Such statements required no answer.

One further question raised in argument remains to be determined; whether or not plaintiff is entitled to interest on the amount paid in excess of the proper levy. The judgment as it now stands is for the total excess payment, $8,547.75, with interest at 6% from September 21, 1923, the date of payment by plaintiff, the whole amounting to $12,137.80. The precise point does not appear to have been raised before in this court, and we are thus free to deal with it unhampered by precedent.

496

It is unnecessary to review the wealth of conflicting authorities in other jurisdictions; these are very fully summarized in a recent note in 57 American Law Reports, page 357. The weight of authority appears to be that where the taxpayer is entitled to a refund on an excess payment of taxes, whether such right accrues by virtue of statute or not, the taxpayer is entitled to interest on the refund if no statute or public policy militates against it. Such is the law in the United States courts (as to governmental agencies: Nat. Volunteer Home v. Parrish, 229 U. S. 494), in New York (Matter of O'Berry, 179 N. Y. 285), and in Massachusetts (Boott Cotton Mills v. Lowell, 159 Mass. 383), as well as several other states. See Fidelity Title & Trust Co. v. City of Pittsburgh, 63 Pitts. L. J. 576. With this view we agree.

The question remains as to the period during which interest should run. Here again the balance of authority and reason concur in holding that interest should be allowed on the refund due the taxpayer only from the date of the demand by the taxpayer upon the authorities for repayment. As said in Boott Cotton Mills v. Lowell, supra, "although the assessors may have erred in judgment, the city or town has not been at fault in the assessment or collection of the tax, nor in the retention of the money paid; it is not compelled to make the reimbursement because of its default, but because for that purpose it is the designated instrument of the government. . . . . . The same considerations negative any obligation on the part of the municipality to make reimbursement until demand therefor is made. The sums received into the treasury are not earmarked. They are the property of the municipality, and it is under no obligation to the taxpayer until his abatement is allowed. . . . . . It follows that the municipality is in no default in not making reimbursement until demand; and, as interest is not given by the statute which devolves upon the city or town the duty to make reimbursement, only such interest can be included in the judgment as is given

for the improper detention of the money, which would not be until after a demand." In that case the taxpayer paid under protest, but the same principle should apply where the payment, though voluntary, could be compelled and hence protest would be unavailing. In the case at bar, the school district would have been within its statutory rights in collecting the entire tax and would have been under no obligation to repay the excess until the final valuation decree of February 5, 1925. It was not until then that plaintiff's right accrued, and the public funds should not be penalized by charging interest upon the amount due until plaintiff made a formal demand upon the proper authorities, giving notice that it intended to exercise its right. It appears from the record, in the testimony of a witness for the plaintiff, that plaintiff, after the final adjudication of the assessment, made several demands upon defendant school district for repayment of the excess, the first being a letter written on July 1, 1925. It follows that the judgment should have been for the principal sum due plaintiff, $8,547.75, with interest at 6% from July 1, 1925. With this modification, the judgment of the court below will be affirmed, and judgment will be entered for plaintiff here for the amount found to be due as stated above.

Judgment affirmed, as modified.