YAWKEY-BISSELL CORPORATION, Appellant, vs. TOWN OF LANGLADE, Respondent.

*April 9—May 6, 1952.*

*Gustav Winter* of Antigo, for the appellant.

For the respondent there was a brief by *Whiting & Whiting* of Antigo, and oral argument by *A. N. Whiting.*

FRITZ, C. J. The evidence on the trial established the following facts. The plaintiff, Yawkey-Bissell Corporation, on April 1, 1946, purchased at the price of $1.13 per acre, fourteen thousand acres of cutover land in the town of Langlade. There was some second-growth timber on some of the forty-acre descriptions. None of them are entirely worthless but between twenty-five per cent and thirty per cent of the acreage is worthless. The town assessor, Edwin Hoffman, assessed each one of the forty-acre tracts at $150 regardless of the relative value of one forty-acre description as compared with another. This same valuation was placed on all cutover lands, whether they were owned by the plaintiff or some other taxpayer. The taxes levied on such assessment of plaintiff's land in 1948 and 1949 were *in*voluntarily paid by plaintiff under protest; and claims for refunds of a part thereof were duly made by plaintiff. The town board failed to allow said claims, and within one year from the time it paid said taxes, plaintiff brought two actions against the town of Langlade. (But this appeal is in relation solely to the amount paid *in*voluntarily because of said excessive assessment in 1948.)

Edwin Hoffman,—the assessor for the town of Langlade for the years 1948, 1949, and 1950,—on adverse examinations before the trial, and also on the trial, testified: That all cutover land in the township, whether owned by the plaintiff or other taxpayers, was assessed at $150 a forty straight through for the year 1948; that the assessment of such cutover lands was ". . . just a little above what they could have probably been sold for . . . ;" that he thought that the fourteen thousand acres owned by Yawkey-Bissell and assessed by him at $52,050 in 1948 would have brought a price at private sale somewhat less than that figure; that he assessed milk cows in the township in 1948 at $30 to $35 a head which in his opinion would have sold for $150; "It shows it on the books, I have to say it;" that he assessed

agricultural or farm lands on the average of fifty per cent of their full value; and that he assessed mercantile real estate at about one ninth or one tenth of its full value. Thus he conceded, in other words, that he had assessed cutover land for more than full value; but that no other property in the township was assessed for more than fifty per cent of full value; and that some of it for only one tenth of such value.

There was undisputed proof that in 1950 Hoffman was assisted in making his assessment by William Hartman, appointed by the Wisconsin department of taxation. Hoffman admitted that Exhibit A, the report of the supervisor of assessments to the Langlade county board of supervisors for the year 1948, correctly indicated that his assessment for Class "E" real estate, swamp, cutover, and wasteland, totaled $120,915 and that his total assessment of all real and personal property for the year 1948 was $272,978. Cutover lands amounted to nearly one half of the total value of the property in the township in 1948. Hoffman admitted also that plaintiff's Exhibit C, which is the 1950 report of the supervisor of assessments to the county board, correctly indicated that the assessment made by him, with the assistance of William Hartman, was $111,360 for Class "E" real estate, swamp, cutover, or wastelands, while for the same year all real and personal property in the township was assessed for $782,065. In other words, the ratio between cutover lands and the aggregate assessment of all property was approximately one seventh in 1950, whereas it was nearly one half in 1948.

Pursuant to stipulation, there were received in evidence plaintiff's Exhibits A, B, and C, the statistical reports for the years 1948, 1949, and 1950 submitted to the Langlade county board of supervisors by William F. Rohlf, supervisor of assessments for the area. He testified on cross-examination that in both 1948 and 1949 Class "E" and "F," cutover and timberlands in the town of Langlade, represented approxi-

mately forty-seven per cent of the aggregate of all property in the township; and that in 1950, the year in which the assessment was supervised and William Hartman assisted the local assessor, the same two classes, that is Class "E" cutover, and Class "F" timberland in the township, whether owned by plaintiff or anyone else, represented only 17.45 per cent—about one seventh—of the total aggregate of all property. William F. Rohlf stated that he did *not* like to call this *discrimination against the owners of cutover lands because that would imply bad faith,* but would rather say that *it was an honest mistake.*

There was no testimony on the part of the defense to contradict the testimony and the reports which conclusively showed that proportionate to other property in the township, cutover lands, including those of the plaintiff, had been radically overassessed in 1948.

As stated in *Highlander Co. v. Dodgeville,* 249 Wis. 502, 507, 508, 25 N. W. (2d) 76: "Sec. 70.32, Stats., requires that all property be assessed at 'the full value which could ordinarily be obtained therefor at private sale.' An assessment on any other basis is illegal, and if the assessment arbitrarily puts an assessment on a taxpayer's property that is not merely a violation of sec. 70.32 but so substantially out of line with other assessments as to impose an inequitable tax burden, he may invoke sec. 74.73 to recover any excess paid by him. Such a situation is that described in *Day v. Pelican, supra,*—[94 Wis. 503, 69 N. W. 368]—as an irregularity that necessarily affects the principle of the tax and shows that it must be unjust and unequal. . . . But, we conclude that where an arbitrary and substantially excessive assessment does impose an inequitable burden the very situation contemplated by sec. 74.73 is present."

Consequently as in the case at bar the cutover lands in question were illegally assessed in 1948 at more than their full value, and no other property in the township was assessed

at more than one half of such value, said assessment of such lands was clearly illegal. Therefore the judgment must be reversed and the cause remanded with directions to enter judgment for plaintiff's recovery of one half of the amount which it *in*voluntarily paid as taxes on said lands for the year 1948, with interest on said amount at five per cent from July 30, 1949.

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment for plaintiff's recovery as provided in this opinion.