ASSOCIATED HOSPITAL SERVICE, INC., Respondent, v. CITY OF MILWAUKEE, Appellant. [Two cases.]

*October 31—November 27, 1962.*

For the appellant there was a brief by *John J. Fleming,* city attorney, and *Ewald L. Moerke, Jr.,* and *Harvey G. Odenbrett,* assistant city attorneys, and oral argument by *Mr. Moerke* and *Mr. Odenbrett.*

For the respondent there was a brief by *Foley, Capwell, Duersten & Foley* of Racine, attorneys, and *Walter H.*

*Bender* of Milwaukee of counsel, and oral argument by *Mr. Rex Capwell* and *Mr. Bender.*

BROWN, C. J. The issue raised on appeal is whether a municipality must pay interest on a refund of real and personal-property taxes which were illegally assessed and were paid under protest.

The legislature, by enacting sec. 62.11 (5), Stats., empowered municipalities to levy taxes. The city of Milwaukee adopted this statutory grant in 1934 by enacting sec. 6.04 of the Milwaukee city charter. The legislature has also provided for the refunding of taxes illegally assessed by municipalities by its enactment of sec. 74.73:

"(1) Any person aggrieved by the levy and collection of any unlawful tax assessed against him may file a claim therefor against the town, city, or village, whether incorporated under general law or special charter, which collected such tax in the manner prescribed by law for filing claims in other cases, and if it shall appear that the tax for which such claim was filed or any part thereof is unlawful and that all conditions prescribed by law for the recovery of illegal taxes have been complied with, the proper town board, village board, or common council of any city, whether incorporated under general law or special charter, may allow and the proper town, city, or village treasurer shall pay such person the amount of such claim found to be illegal and excessive. If any town, city, or village shall fail or refuse to allow such claim, the claimant may have and maintain an action against the same for the recovery of all money so unlawfully levied and collected of him. Every such claim shall be filed; and every action to recover any money so paid shall be brought within one year after such payment and not thereafter."

This statute, however, is silent as to the granting of interest on taxes illegally assessed. In *Schlesinger v. State* (1928), 195 Wis. 366, 369, 218 N. W. 440, we held that:

"When a tax-refund statute is silent as to interest, it does not imply that interest should be paid. 'On the contrary, the intention thereby disclosed is in denial of interest under it.' *Kaemmerling v. State,* 81 N. H. 405, 406, 128 Atl. 6, 7. Such a statute 'plainly indicates that interest is not recoverable.' *Antero Reservoir Co. v. Board of Comm'rs,* 75 Colo. 131, 225 Pac. 269, 271. 'If the legislature had intended to provide for the payment of interest on taxes illegally collected, when refund was made, it would have said so in unequivocal language.' *Home Savings Bank v. Morris,* 141 Iowa 560, 562, 120 N. W. 100, 101."

The application of the rule enunciated in that case to the facts of the present case leaves little room for doubt that the interest on the refund cannot be given.

The circuit court held that this court has made a distinction between the right to obtain interest on a refund of taxes involuntarily paid and of those voluntarily paid. By the circuit court's interpretation of this distinction, taxes involuntarily paid if illegally assessed must be refunded with interest, whereas in the latter situation no right to interest exists. In support of this theory the circuit court quotes certain portions of *Schlesinger v. State* (1929), 198 Wis. 381, 387, 223 N. W. 856, which is a companion case to the above-cited *Schlesinger Case:*

"It does not seem necessary to consider the case further. We can see no ground upon which the plaintiffs are entitled to interest. In the first place, the payment of the tax was a voluntary payment. They paid it voluntarily under and pursuant to a law which provided an exclusive remedy in case they paid more than the amount of the tax actually due. They knew what their rights would be in case they made an overpayment. They knew that the overpayment would be refunded to them by the state treasurer, or the county treasurer, as the case might be. They knew that the amount which would be refunded would be the amount of such excess without interest. As no element of coercion in-

duced the payment, there was no taking of property on the part of the state or county."

The voluntary payments so discussed refer to a statute which provides for the payment of inheritance taxes before they are judicially determined. After the tax is ascertained by the court, and if there has been an excess payment, the statute commands the county treasurer to refund the excess. By this statute no action has to be commenced by the taxpayer for him to obtain his refund. This procedure for refund of taxes voluntarily paid is contrasted to an action for refund brought by the taxpayer. The action for refund is in the nature of the action for money had and received which existed before the passage of sec. 74.73, Stats. *A. H. Stange Co. v. Merrill* (1908), 134 Wis. 514, 115 N. W. 115; *Matheson v. Town of Mazomanie* (1865), 20 Wis. 201 (*191). Sec. 74.73, Stats., incorporated the common-law action for money had and received. *A. H. Stange Co. v. Merrill, supra.* "The universal remedy accorded to the taxpayer from whom excessive or illegal taxes have been exacted is an action in the nature of money had and received, and so eminent an authority on the subject as Judge COOLEY says that in such an action interest is recoverable only when expressly allowed by statute." *Schlesinger v. State* (1929), 198 Wis. 381, 384, 223 N. W. 856. The basic reason the taxpayer in the *Schlesinger Case* did not recover interest on the refund is because the statutes did not provide for any interest, and because he knew the overpayment would be refunded without any interest. Had he paid the taxes involuntarily and had he sought a refund by the commencement of an action, he still would not have been able to obtain any interest for such an action does not carry with it the right to interest without any express statutory provision. The circumstances in the *Schlesinger Case* differ from the action for refund, but the conclusion in both instances is the same; interest is not granted.

Also in support of the distinction between taxes involuntarily paid and voluntarily paid, the circuit court reasoned, and the respondent contends, that the case of *Yawkey-Bissell Corp. v. Langlade* (1952), 261 Wis. 524, 53 N. W. (2d) 174, is determinative of the issue in the case at bar. In that case this court granted interest on a refund of taxes involuntarily paid. However, no issue was raised in that case with respect to the interest on refunds; it was granted incidentally to the refund.

Respondent argues that appellant is now precluded from raising the issue of whether interest should be granted because in the companion case of *Associated Hospital Service v. Milwaukee* (1961), 13 Wis. (2d) 447, 109 N. W. (2d) 271, in which the action was for a refund on real and personal-property taxes for 1956, 1957, and 1958, we ordered the trial court to enter judgment on the three complaints. The complaints prayed for the refund together with interest from the date of payment.

We have re-examined the briefs submitted in the 1961 *Associated Hospital Service* appeal, and in them no issue was raised nor was argument made upon the liability of the city for payment of interest on the illegal tax collection. Neither did this court's opinion touch upon it. The trial court had denied plaintiff-appellant's motion for summary judgment, and our mandate appearing in 13 Wis. (2d) 447, 474, 109 N. W. (2d) 271, reversed and directed judgment to be entered as prayed for in the plaintiff's complaint.

When the present two actions were commenced, the 1961 case was still pending. After the decision in that case was announced by this court, present appellant and respondent entered into stipulations in the trial court whereby appellant would refund the taxes illegally assessed in 1959 and 1960. However, they agreed that the only issue remaining to be tried was whether interest on the refunds of 1959 and 1960 should be granted.

We have held that if actions are pending between the same parties, and the issues involved are the same, a determination of such issues in one action will be *res judicata* in the other. *Baker v. Becker* (1913), 153 Wis. 369, 383, 141 N. W. 304. The issues raised in the earlier case were whether the hospital-service corporation qualified for tax exemption and whether the refund could be granted; the interest prayed for in the complaint was only incidental to the refund. The sole issue raised in the present case was whether interest on the refund should be given. The stipulations entered into by appellant and respondent indicate that it was not the intention of the parties to litigate the issue of granting interest in the previous actions, and neither party was estopped from raising the issue in the trial court or on appeal. *Baker v. Becker, supra.*

We have held also that a judgment is conclusive in a subsequent action between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings. *Werner v. Riemer* (1949), 255 Wis. 386, 403, 39 N. W. (2d) 457, 39 N. W. (2d) 917. However, this rule does not apply to the instant case for the cause of action involved here arose out of a subject matter, a later assessment, different from that of the earlier case.

"Where a question of law essential to the judgment is actually litigated and determined by a valid and final personal judgment, the determination is not conclusive between the parties in a subsequent action on a different cause of action, except where both causes of action arose out of the same subject matter or transaction; . . ." Restatement, Judgments, pp. 318, 321, sec. 70.

Comment *c* to this section is instructive:

"*Questions of law not litigated.* A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of law not litigat-

ed in the first action. This is true even though both actions involve the same subject matter."

We are particularly unwilling to allow the law concerning interest on tax refunds presently to be determined by the mandate allowing interest in the 1961 case when that feature of the action received no attention by either counsel or this court. Therefore, we determine that the interest allowance in the prior action is not *res judicata* when applied to the two appeals now before us.

Respondent contends it has been deprived of the right to invest the funds paid as taxes during the time the city illegally withheld the refund; that the city has had the use of such funds during this period, and under the modern attitude toward municipal liability as explained in *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618, granting interest on refunds would simply put the parties in a true *status quo*.

Although the facts in this case occurred prior to the decision in the *Holytz Case,* we will consider this question on its merits. The abolition of municipal immunity applies to torts. The present actions for refunds are in the nature of actions for money had and received. The theory of recovery in this type of action is based on quasi-contract law. *Arjay Investment Co. v. Kohlmetz* (1960), 9 Wis. (2d) 535, 539, 101 N. W. (2d) 700. Therefore, recovery of interest cannot be based on abrogation of the doctrine of municipal immunity in tort actions.

Respondent adopts the reasoning of the circuit court in its contention that to disallow interest on an illegally assessed tax, where the tax is paid under protest, might tend to encourage laxity in assessments if the consequence is merely the refunding of the actual tax. No showing has been made by the respondent that the appellant was irresponsible in its assessment or that municipalities are or

have been lax in their tax assessments. The legislature intrusted municipalities with the power to tax and to grant refunds. Therefore, it is properly within the legislative sphere to determine whether the municipalities are lax in this regard and whether the situation would be corrected by providing for interest on refunds.

Our preference would be to affirm the judgments of the learned trial court, recognizing that the city ought not to profit by the uncompensated use of respondent's money illegally exacted and withheld and the respondent correspondingly injured. If we could see our way clear to affirm the learned trial court without doing violence to what seems to us to be the law as laid down by the statute, sec. 74.73, in which no interest is provided upon a refund, we would gladly do so. For lack of such a way we conclude the judgments must be reversed.

*By the Court.*—Judgments reversed, and cause remanded with directions to dismiss the complaints.

CURRIE, J. (*dissenting*). I respectfully dissent from the majority holding that plaintiff taxpayer, which involuntarily paid real and personal-property taxes illegally imposed upon it, is not entitled to recover interest on the refund of these payments. The thrust of this dissent is that the subsequent decisions of this court in *Yawkey-Bissell Corp. v. Langlade* (1952), 261 Wis. 524, 53 N. W. (2d) 174, and *Associated Hospital Service v. Milwaukee* (1961), 13 Wis. (2d) 447, 109 N. W. (2d) 271, which are in direct conflict with *Schlesinger v. State* (1928), 195 Wis. 366, 218 N. W. 440, 57 A. L. R. 352, leave this court free to repudiate the rule of the latter case. Furthermore, the interests of justice and precedents from other jurisdictions require that this be done.

It is true that in matters of statutory construction, the doctrine of *stare decisis* generally requires that prior deci-

sions of this court be followed. This is because the construction given to a statute by this court becomes part of the statute when the legislature does not subsequently amend the statute so as to effect a change. *Hahn v. Walworth County* (1961), 14 Wis. (2d) 147, 154, 109 N. W. (2d) 653; *Meyer v. Industrial Comm.* (1961), 13 Wis. (2d) 377, 382, 108 N. W. (2d) 556; *Eau Claire Nat. Bank v. Benson* (1900), 106 Wis. 624, 627, 82 N. W. 604. Nevertheless, this rule is inapplicable when there is a conflict in our decisions concerning the construction to be given a statute, and the legislature fails to act. This is because it is usually impossible to determine which of the conflicting decisions the legislature impliedly accepts by its failure to amend the statute.

The majority opinion points out that this court did not consider the issue of whether interest could be legally recovered when we approved its payment in the *Yawkey-Bissell* and *Associated Hospital Service Cases*. This would be a persuasive argument for following the rule of the *Schlesinger Case* if we were to conclude that it represented the sounder result. The very fact, however, that the *Yawkey-Bissell* and *Associated Hospital Service Cases* are in conflict with *Schlesinger* gives us a freedom of choice in the instant appeal.

The subject of the right of a taxpayer to collect interest on a tax refund is annotated in 57 A. L. R. 357, 76 A. L. R. 1012, and 112 A. L. R. 1183. While there is great conflict among the authorities on this issue, it appears from these annotations that a majority of jurisdictions do permit recovery of interest. Thus, even if the *Schlesinger Case* correctly stated that the majority rule was then to the contrary, this is no longer true today.[1]

---

[1] The author of the annotation in 57 A. L. R. 357, at page 364, points out an inaccuracy in the discussion, in the *Schlesinger Case,* of authorities from other jurisdictions. In addition to declaring

In *Philadelphia & Reading Coal & Iron Co. v. School Dist.* (1931), 304 Pa. 489, 156 Atl. 75, 76 A. L. R. 1007, the Pennsylvania court considered a statute which provided for refund of taxes where excessive assessments of property were later reduced. This statute was silent on the matter of interest. The court held that interest could be recovered on the refund where the payment of tax was involuntary. The opinion stated (at p. 495):

"The precise point does not appear to have been raised before in this court, and we are thus free to deal with it unhampered by precedent. It is unnecessary to review the wealth of conflicting authorities in other jurisdictions; these are very fully summarized in a recent note in 57 American Law Reports, page 357. The weight of authority appears to be that where the taxpayer is entitled to a refund on an excess payment of taxes, *whether such right accrues by virtue of statute or not,* the taxpayer is entitled to interest on the refund if no statute or public policy militates against it." (Emphasis supplied.)

The court noted that this was the law in the United States courts as well as in New York, Massachusetts, and several other states.

Similarly, in *Chicago, St. P., M. & O. R. Co. v. Mundt* (1930), 56 S. D. 530, 229 N. W. 394, the South Dakota court considered a statute allowing a refund of taxes wrongfully collected "for any reason going to the merits of the tax." This statute also made no mention of interest. The court noted the conflict of authority, on the question of recovery of interest on tax refunds, and concluded that the numerical weight of authority seemed in favor of allowing

that New York followed the "minority rule," the *Schlesinger Case* stated that the holding in *Matter of O'Berry* (1904), 179 N. Y. 285, 72 N. E. 109, which allowed the recovery of interest, had been abrogated by legislative enactment. The annotation terms this statement "at least misleading" because the rule of the *O'Berry Case* had only been curtailed as to certain particular taxes, and then only to a limited extent.

interest. The rationale of the opinion, which permitted taxpayer to recover interest, is found in this statement (at p. 533):

"It seems to us the fair, just, and reasonable rule that, when the sovereign submits itself to suit, unless the statute expressly provides to the contrary, it should come into court on the same basis as to liability for interest and costs, in the event of adverse decision, as any other suitor."

The Montana court permitted recovery of interest by a taxpayer under a tax-refund statute that was silent as to interest. *Williams v. Harvey* (1931), 91 Mont. 168, 6 Pac. (2d) 418. Similarly, the United States district court for Alaska also permitted recovery of interest under a territorial statute, which provided for refund of taxes illegally paid but made no mention of interest. *Ketchikan Spruce Mills v. Dewey* (1957), 17 Alaska 336.

Principles of natural justice require this result where it can be achieved without disturbing settled legal principles. As Judge LEARNED HAND declared in *Procter & Gamble Distributing Co. v. Sherman* (D. C. N. Y. 1924), 2 Fed. (2d) 165, 166:

". . . it is not an adequate remedy, after taking away a man's money as a condition of allowing him to contest his tax, merely to hand it back, when, no matter how long after, he establishes that he ought never to have been required to pay at all."

The Arizona court, in *State Tax Comm. v. United Verde Extension Mining Co.* (1931), 39 Ariz. 136, 146, 4 Pac. (2d) 395, states the policy reasons in favor of allowing recovery of interest where taxes, involuntarily paid, are later declared illegal and refunded:

"It is presumed that the sovereign state, in dealing with its citizens, intends to apply the same rules of abstract justice as it applies in actions between citizens. Certainly, it

would be admitted to be both law and justice that, when A sues B to recover money wrongfully obtained, if he recover he is entitled, not merely to the principal sum paid, but also to interest from the date of payment. *Arkadelphia Milling Co. v. St. Louis S. W. R. Co.* 249 U. S. 134, 63 L. Ed. 517, 39 Sup. Ct. Rep. 237; 33 C. J. 203. And in reason and logic, when the state compels one of its citizens under pain of forfeiting all rights of recovery, to pay in advance of suit a sum of money which it is afterwards adjudged was illegally demanded, the same principle of common justice would require that the state, to make the citizen whole, should repay not merely the sum illegally so obtained, but interest from the date the money was paid to it. Were this a case of a small taxpayer, who, in order to maintain his suit, was compelled to borrow money to pay the illegal tax, it would be recognized at a glance that full justice could only be done by repaying to him, not only the sum so paid, but interest thereon, and in principle no difference exists because the taxpayer in this case happens to be a large corporation which presumably had in its treasury the funds to pay the tax."

Prior to our recent decision in *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618, governmental units enjoyed immunity from tort liability. In the *Holytz Case,* we determined that such governmental units should bear the same responsibility for their acts, and those of their agents, as do other persons and corporations. If this is a sound principle to apply in tort law, it is equally sound to apply it where a government illegally exacts a payment from a citizen in a situation where the statute requires that the payment be refunded. It seems highly illogical to attempt to distinguish the two situations by saying one falls in the sphere of tort law and the other in the field of quasi-contract law. This is because the underlying consideration upon which recovery in quasi contract is permitted is "the universally recognized moral principle that one who has received a benefit has the duty to make restitution

when to retain such benefit would be unjust." *Arjay Investment Co. v. Kohlmetz* (1960), 9 Wis. (2d) 535, 539, 101 N. W. (2d) 700.

I would affirm the judgments below.

I am authorized to state that Mr. Justice DIETERICH joins in this dissenting opinion.