The Monongahela Connecting Railroad Company,
a corporation, Appellant *v.* City of Pittsburgh, a
municipal corporation, Appellee.

Argued May 8, 1979, before President Judge Bow-
MAN and Judges CRUMLISH, JR., WILKINSON, JR., MEN-
CER, ROGERS, BLATT and MACPHAIL. Judges DISALLE
and CRAIG did not participate.

*Peter H. Beaman*, with him *Ronald S. Krasnow*,
and *Kirkpatrick, Lockhart, Johnson & Hutchison*, for
appellant.

*Grace S. Harris*, Executive Assistant City Solici-
tor, with her *Mead J. Mulvihill, Jr.*, City Solicitor, for
appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, September
6, 1979:

Appellant, Monongahela Connecting Railroad
Company (Mon-Con), appeals from an order of the

Court of Common Pleas of Allegheny County which entered judgment in favor of appellee, City of Pittsburgh, and against Mon-Con in the amount of $16,859.48. Mon-Con contends the trial court's application of the Act of October 26, 1972, P.L. 1032 (Act 255-1972), amending Section 17 of the Act of June 21, 1939, P.L. 626, *as amended,* 72 P.S. §5452.17, constitutes an infringement on its constitutional rights as afforded by Article VIII, Section 1 of the Pennsylvania Constitution and Section 1 of the Fourteenth Amendment to the United States Constitution. It argues that the dispute between it and the City would be resolved properly in its favor by the application of Section 17 of the Act of June 21, 1939, as it existed prior to the adoption of Act 255-1972.

The dispute stems from error on error. Mon-Con paid and timely appealed tax assessments of its real estate by the City for the triennials beginning in 1966, 1969 and 1972. On November 26, 1973, the Board of Property Assessments, Appeals and Review sustained the appeals and reduced the assessments levied upon Mon-Con's realty. Upon notice, the City refunded the excess tax collected with interest. Approximately a year later, the City notified Mon-Con that interest was not owed on the tax refund and demanded return of the improper prior payment. Mon-Con's refusal to comply with the City's directive prompted the City to file a complaint in assumpsit in common pleas court. The parties have stipulated the amount in dispute to be $16,859.48.[1] In the disposition of exceptions to the trial judge's order, the court en banc reversed the initial determination and found for the City. The trial

---

[1] The amount of interest sought by the City originally was more than the amount presently stipulated to be in dispute. Mon-Con has paid to the City an amount it admitted was owing, *i.e.,* interest for the year 1973 which it conceded was not covered by Act 138-1970.

judge, in a concurring opinion, joined in the result reached by the majority.

The development of the obligation of government to refund excess taxes paid voluntarily and to pay interest on such refunds parallels the movement of legal thought away from the theory of the omnipotence of the sovereign. At common law in Pennsylvania there was no cause of action by which a taxpayer could recover taxes paid but not owed unless the assessment was void and paid under compulsion. Statute and judicial decision slowly wrought a more comprehensive right and a recognition of the importance of interest. By 1931, our Supreme Court in *Philadelphia & Reading Coal & Iron Co. v. Tamaqua Borough School District,* 304 Pa. 489, 156 A. 75 (1931), could characterize the state of the law in this manner:

> Undoubtedly, the well established rule in this State is that a voluntary payment of taxes to the public authorities, without any duress, threats, or misstatements on the part of the latter, or protest and notice of intention to reclaim on the part of the taxpayer, precludes subsequent recovery of any overpayment. *If the payment was a voluntary one, it may not be recovered unless a statute so provides.*
>
> . . . .
>
> . . . The weight of authority appears to be that, where the taxpayer is entitled to a refund on an excess payment of taxes, whether such right accrues by virtue of statute or not, *the taxpayer is entitled to interest on the refund if no statute or public policy militates against it. . . .* With this view we agree. (Citation omitted.) (Emphasis added.)

*Philadelphia & Reading Coal & Iron Co.,* 304 Pa. at 494, 496, 156 A. at 76-77.

These two focal points, the existence of a statute authorizing recovery by the taxpayer of excess voluntarily paid and the entitlement to interest are both recognized in Section 17 of the Act of June 21, 1939. That section, as amended by the Act of June 22, 1970, P.L. 415 (Act 138-1970), provided:

No appeal taken from any assessments made under this act shall affect the validity of any taxes assessed, nor shall it prevent the collection of the taxes based upon the assessment if such assessment shall thereafter be reduced, an exoneration shall be granted for the proper amount to equalize such reduction, if taxes based upon such assessment have not been paid, and if the taxes based upon such assessment have been paid the excess taxes collected shall be refunded to the person having made such payment. Such refunds shall be made within thirty (30) days after the tax levying authorities have been notified by mail of the reduction made in the assessment by the board or by the court and *such refunds shall include interest at the legal rate commencing one (1) year after the date of payment.* No such appeal shall operate to relieve the appellant from liability for accrued interest and penalties on any unpaid taxes based upon the assessment as finally established. (Emphasis added.)

Inasmuch as Section 2 of Act 138-1970 dictated that the amendment would be applicable to all refunds made after June 22, 1970, and this Court in *Woolworth Co. v. Pittsburgh,* 2 Pa. Commonwealth Ct. 338, 284 A.2d 143 (1971), concluded that the provisions of Act 138-1970 applied to all refunds made after the effective date regardless of when the taxes were originally paid, Mon-Con contends that its claim for interest,

created by Act 138-1970, cannot be impaired by subsequent amendments to the Act of June 21, 1939.

In particular, subsequent to the passage of Act 138-1970 but prior to the determination of the Board of Property Assessments, Appeals and Review, Section 17 was amended by Act 255-1972 to state in part:

> No appeal taken from any assessments made under this act shall affect the validity of any taxes assessed, nor shall it prevent the collection of taxes based upon the assessment if such assessment shall thereafter be reduced, an exoneration shall be granted for the proper amount to equalize such reduction, if taxes based upon such assessment have not been paid, and if the taxes based upon such assessment have been paid the excess taxes collected shall be refunded to the person having made such payment. Such refunds shall be made within thirty (30) days after the tax levying authorities have been notified by mail *by the board* of the reduction made in the assessment by the board or by the court and such refunds shall include interest at the legal rate commencing one (1) year after the date of the *receipt by the tax-levying authorities of the mailed reduction notice from the board, but in no event shall said statutory interest begin to accrue prior to June 22, 1970.* No such appeal shall operate to relieve the appellant from liability for accrued interest and penalties on any unpaid taxes based upon the assessment as finally established. (Emphasis added to indicate amendatory language.)

The second section of Act 255-1972 provides:

> This act shall take effect immediately [October 26, 1972] and shall apply to all refunds made after the effective date of this amenda-

tory act except that on refunds resulting from reductions by the board or court prior to passage of this act interest shall be paid in accordance with statutory provisions in effect at the time reductions were made.

Such statutory modification clearly was intended to prevent the accumulation of interest on Mon-Con tax payments made prior to June 22, 1970, and since the City refunded excess taxes within one year of notice of the decision of the Board of Property Assessments, Appeals and Review, Mon-Con has no statutory basis for a claim for any interest under the provision of Act 255-1972.

Mon-Con contests such an analysis by arguing that its right to interest vested prior to the passage of the more recent amendatory act and, therefore, may not be extinguished by it. As the Superior Court has said, "[t]he essence of a vested right is fixity; rights are vested only when they are fixed, unalterable or irrevocable." *Miller v. Johnston Traction Co.*, 167 Pa. Superior Ct. 421, 428, 74 A.2d 508, 511 (1950). Prior to the decision of the Board on November 26, 1973, Mon-Con had nothing more than the same expectation of success which induced it to file appeals from the City's valuation of its property.[2] Regardless of method of calculation, no claim to interest may accrue until a reduction in assessment resulting in a refund of taxes arises. Mon-Con's right to a refund vested on November 26, 1973, and its right to interest is governed by the statute in effect at that time.

Despite Mon-Con's arguments to the contrary, such a conclusion is not violative of the uniformity

---

[2] This conclusion renders Mon-Con's argument as to the applicability of 1 Pa. C.S. §1976 (effect of repeal on rights, et cetera) irrelevant since that section establishes that "[t]he repeal of any civil provision of a statute shall not affect or impair any . . . right existing or accrued. . . ."

clause of the Pennsylvania Constitution or the equal protection and due process clauses of the Federal Constitution. Reliance upon the date of the Board's decision rather than the date taxes were paid to the City is not unreasonable in light of our determination that rights vested on the former date. To distinguish expectations from vested rights does not create an arbitrary classification system. Nor is the application of the Act 255-1972 method of calculating interest to matters commenced prior to the effective date of the latest amendment a retroactive implementation of a statute and therefore violative of due process rights. As stated in *Gehris v. Department of Transportation,* 471 Pa. 210, 214-15, 369 A.2d 1271, 1273 (1977):

> [T]here can be no doubt that, absent clear language to the contrary, statutes are to be construed to operate prospectively only. It is manifest, however, that this principle becomes pertinent only after it has been determined that a proposed operation of a statute would indeed be retrospective. In this regard, our courts have held that a statute does not operate retrospectively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment. (Citations omitted.)

Although the appeals to the Board were filed prior to the passage of Act 255-1972, we find the date upon which the right to a refund came into being to be more significant. Moreover, Section 2 of Act 255-1972 by its own terms directs a prospective application of the changes wrought by the amendatory language. We shall affirm the lower court.

## Order

Now, September 6, 1979, the order of the lower court is hereby affirmed.