532 A.2d 41

Connecticut General Life Insurance Company, R. Gordon Mathews and Jack L. Friedlander, Appellants *v.* Chartiers Valley School District, and Township of Scott, Appellees.

Chartiers Valley School District and Township of Scott, Appellants *v.* Connecticut General Life Insurance Company, R. Gordon Mathews and Jack L. Friedlander, Appellees.

Connecticut General Life Insurance Company, R. Gordon Mathews and Jack L. Friedlander, Appellants *v.* Chartiers Valley School District, and Township of Scott, Appellees.

Argued May 18, 1987, before Judges CRAIG and PAL-LADINO, and Senior Judge KALISH, sitting as a panel of three.

*Leonard M. Mendelson, Hollinshead & Mendelson,* for appellants/appellees, Connecticut General Life Insurance Company, R. Gordon Mathews and Jack L. Friedlander.

*Robert L. Federline,* with him, *Thomas J. Dempsey,* for appellees/appellants, Chartiers Valley School District and Township of Scott.

OPINION BY JUDGE PALLADINO, October 8, 1987:

These cross-appeals by Connecticut General Life Insurance Company, R. Gordon Mathews and Jack L. Friedlander, as taxpayers, and Chartiers Valley School District and Scott Township, as taxing bodies, are part of a continuing series of tax assessment appeals involving Chatham Park Apartments.

Chatham Park Apartments are owned by the taxpayers and located on three lots in Scott Township, Allegheny County. These lots are identified as Parcel 64-B-190, Parcel 64-G-2 and Parcel 64-G-50 in the Deed Assessment and Registry Office of Allegheny County.

Taxpayers initiated real estate tax assessment appeals for numerous years, involving all three parcels, before the Board of Property Assessment and Review of

Allegheny County (Board). By decision dated December 21, 1977, the Board revised the assessment of Parcel 64-G-50 for the years beginning 1969 up to and including the assessment for 1978. Thereafter, on July 21, 1978, the Board revised the assessments of Parcels 64-B-190 and 64-G-2 for the years 1976, 1977 and 1978. Both Board decisions were appealed to the Court of Common Pleas of Allegheny County (trial court) by the taxing bodies.

Following a trial *de novo* on the assessment appeals, the Honorable RAYMOND L. SCHEIB, judge of the trial court, entered an order dated April 25, 1980 revising the assessments for taxpayers' property through and including 1979. We affirmed.[1] On October 19, 1982, the Pennsylvania Supreme Court refused the taxing bodies any further appeal, while, on the same date, granting Allocatur to the taxpayers. However, by order dated March 17, 1983, the taxpayers' petition was dismissed as improvidently granted.

In the interim, while the revised assessments for 1969-1979 were pending in our appellate courts, the Board rendered a revised assessment of the subject parcels for 1980 and 1981. On December 17, 1980, upon the petition of the taxpayers and over objection by the taxing bodies, Judge SCHEIB entered an order permitting the taxpayers to pay their 1980 real estate taxes into court. No one appealed. By order dated June 26, 1981 Judge SCHEIB ordered the funds be distributed to the taxing bodies.

On October 22, 1981, Judge SCHEIB ordered the taxing authorities to issue the 1980 refunds or to accept the 1981 taxes based upon the reduced 1981 assessment and minus the 1980 refund. That same day, taxpayers

---

[1] *Appeal of Chartiers Valley School District,* 67 Pa. Commonwealth Ct. 121, 447 A.2d 317 (1982) (*Chartiers Valley I*).

tendered an amount equal to their 1981 tax liability *less* the amount taxpayers had overpaid their 1980 taxes based on the Board's February 6, 1981 revised assessment for 1980 and 1981 to the taxing authorities, which tenders were refused. Thereafter, on October 30, 1981, Judge SCHEIB, upon petition of the taxpayers and over the objection of the taxing bodies, ordered the 1981 tax liability paid into court. The taxing bodies appealed Judge SCHEIB's October 22 and October 30 orders to Commonwealth Court.

While the appeal was pending before this court, the parties entered into two agreements. The first agreement dated December 15, 1982, provided for the payment of taxes due the taxing bodies and the payment of refunds due the taxpayers for the years 1969 through 1979. The second agreement dated February 23, 1983, provided that notwithstanding the continuing contest by the taxing bodies of the validity of the court orders, the taxpayers would withdraw all monies deposited with the prothonotary of the trial court as well as all interest accrued thereon and promptly pay all 1980, 1981 and 1982 real estate taxes not previously paid. While the taxpayers were not required to pay any interest or penalties claimed by the taxing bodies, the agreements provided that the acceptance of the monies was without prejudice to either party to assert their claim against the other that penalties and interest were due and payable.

On December 12, 1983, the Commonwealth Court reversed the orders of Judge SCHEIB, concluding that the trial court was without jurisdiction to require the payment into court of the 1981 taxes or the payment of tax to the taxing bodies less any refund due as a result of the Board's revaluation because no party had preserved an appeal as to the 1980 and 1981 tax reductions,

and no common law or statutory action existed which could give it jurisdiction.[2]

Taxpayers filed the subject action for the payment of interest they allege is due them on the refunds resulting from the court reduced assessments. The taxing bodies counterclaimed, seeking penalties and interest they assert is owing for the late payment of taxes. The case was assigned to the Honorable GENE STRASSBURGER, Judge of the trial court. The parties entered into a stipulation of facts and the case was tried by stipulation.

Judge STRASSBURGER filed an opinion on February 6, 1985 concluding that taxpayers were entitled to interest on the refunds accruing from a date one year after the Board's assessment disposition. Further, the Judge determined that the taxing bodies could assess penalties for 1981, since this court had reversed Judge SCHEIB's order but could not for tax year 1980, when Judge SCHEIB's order was not appealed and, thus, became final and binding. The parties were directed to meet and formulate a proposed decision within 30 days.

When still unable to compose a decision based on the February 6, 1985 opinion eleven months later, and because certain issues remained undecided, Judge STRASSBURGER filed a supplemental opinion on January 15, 1986. That opinion held that: 1) for tax years 1978 and 1979, the taxing bodies are entitled to penalties based upon the difference between the tax as set by the

---

[2] *Appeal of Chartiers Valley School District*, 79 Pa. Commonwealth Ct. 69, 469 A.2d 324 (1983) (*Chartiers Valley II*). *Chartiers Valley II* also involved the affirmance of an order of Judge SCHEIB concluding that subsequently made Board revaluations as to later years (1980 & 1981) would not be treated as if automatically appealed to the trial court by a party (here the taxing authority) other than the party who originally appealed the pending assessments to the board (here the taxpayer), thus denying an appeal by the taxing authority.

trial court and the amount actually paid (based upon the Board's revaluation); 2) for tax year 1981, taxpayer should be penalized on the full assessed value even though he attempted to tender some but less than the full tax liability; and 3) the taxpayers are not entitled to interest on an award of interest owing pursuant to the Judge's first opinion but not yet paid by the taxing bodies.

Judge STRASSBURGER entered a non-jury verdict on April 24, 1986, in favor of the taxpayers against Scott Township in the net amount of $4,870.76 and against Chartiers Valley School District in the net amount of $6,806.04. Post trial relief was denied by order dated July 18, 1986. Thereafter, both parties appealed to this court.[3]

## 1978 AND 1979 TAXES

Taxpayers appealed the 1978 and 1979 assessments on the subject parcels to the Board, which revised the assessment downward. Thereafter, the taxing bodies appealed the Board's adverse decision to the trial court. The trial court, after a *de novo* hearing, set the assessment less than the original assessment but greater than that of the Board. On appeal, this court affirmed the trial court.

Judge STRASSBURGER ordered the payment of penalties by the taxpayer pursuant to Section 17 of the Second Class County Assessment Law, Act of June 21, 1939, P.L. 626, *as amended*, 72 P.S. §5452.17 (Law), based upon the difference between the tax liability as

---

[3] Our scope of review on appeal from a decision of the court of common pleas is limited to a determination of whether constitutional rights were violated, errors of law committed or whether the court manifestly abused its discretion. *Magill v. Commonwealth*, 104 Pa. Commonwealth Ct. 517, 522 A.2d 172 (1987).

set by the trial court and the tax liability as established by the Board. This section provides:

> No appeal taken from any assessments made under this act shall affect the validity of any taxes assessed, nor shall it prevent the collection of the taxes based upon the assessment if such assessment shall thereafter be reduced, and exoneration shall be granted for the proper amount to equalize such reduction, if the taxes based upon such assessment have not been paid, and if the taxes based upon such assessment have been paid the excess taxes collected shall be refunded to the person having made such payment. Such refunds except as provided in subsection (b) shall be made within thirty (30) days after the tax levying authorities have been notified by mail by the board of the reduction made in the assessment by the board or by the court and such refunds shall include interest at the legal rate commencing one (1) year after the date of the receipt by the tax-levying authorities of the mailed reduction notice from the board, but in no event shall said statutory interest begin to accrue prior to June 22, 1970. No such appeal shall operate to relieve the appellant from liability for accrued interest and penalties on any unpaid taxes based upon the assessment as finally established.

Taxpayers assert that no liability for penalties should attach because they paid the tax as assessed by the Board and they could not foresee that the trial court would, on appeal by the taxing bodies, raise the assessment. They contend "[t]hat requiring them to pay penalties in this situation would create the absurd result of penalizing taxpayers for the underpayment of taxes when those taxes were not due and owing at the time payment was made." We cannot agree.

The statute is clear and unambiguous. It requires a taxpayer, in order to avoid possible liability, to pay the original assessed amount. If on appeal he secures a lower reassessment, he is guaranteed a refund plus interest. If he gambles, and loses, as did taxpayer here, such that the amount paid is less than the assessment as finally established, the statute clearly provides that "[n]o appeal shall operate to relieve the appellant from liability for accrued interest and penalties on any unpaid taxes based upon the assessment as finally established." Section 17 of the Law.

Accordingly, we affirm.

## 1980 TAXES

The trial court concluded that because no party appealed from Judge SCHEIB's February 6, 1985 order requiring the taxpayers to pay into court the disputed taxes for 1980 owed to Chartiers Valley School District within the appeal period, that order became final and may not now be challenged.

Relying on one word from the trial court's opinion, *i.e.* "The taxing bodies are therefore bound by that decision, and *estopped* to controvert it," the taxing bodies (here Chartiers Valley only) launch into a lengthy dissertation on collateral estoppel. This is unnecessary.

Judge SCHEIB ordered the 1980 taxes paid into court. When no one appealed therefrom, the order became final. Thus a good faith payment of the taxes in a timely manner would vitiate any assessment of penalties.

Accordingly, we affirm.

## 1981 TAX ASSESSMENT

The trial court, per Judge STRASSBURGER, determined that taxpayers are liable for penalties on the full amount of their 1981 tax obligation.

By order dated October 22, 1981, Judge SCHEIB ordered the taxing bodies to accept a tender of an amount equal to the taxpayers' 1981 tax liability less 1980 refunds owing to taxpayers. Taxing bodies refused this tender. Thereafter, by order dated October 30, 1981, Judge SCHEIB ordered the money paid into court.

Taxpayers claim that their reliance upon an order of the Court as well as their good faith, as evidenced by both their tender and their payment into court, relieves them of any liability for penalties. We disagree. Section 518.1 of the General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-518.1, provides the procedure for the payment of disputed taxes. Section 518.1 states, in relevant part:

[T]he appeal shall not prevent the collection of the taxes complained of, but in case the same shall be reduced, then the excess shall be returned to the person or persons who shall have paid the same: And provided further, That the appellant may pay the amount of the tax alleged to be due by reason of the assessment appealed from to the tax collector, under protest in writing, in which case when the tax is paid over to the taxing district, it shall be the duty of the tax collector to notify the taxing district of such payment under protest by delivering to it the protest in writing. Whereupon, the taxing district . . . shall be required to segregate twenty-five per centum (25%) of the amount of the tax paid over, and shall deposit the same in a separate account in the depository in which the funds of the taxing district are deposited, and shall not be permitted to expend any portion of such segregated amount, unless it shall first petition the court alleging that such segregated amount is unjustly withheld. Thereupon, the

court shall have power to order the use by the taxing district of such portion of such segregated amount as shall appear to said court to be reasonably free from dispute, and the remainder of the segregated amount shall be held segregated by the taxing district pending the final disposition of the appeal.

Therefore, the proper method would have been to pay the tax under protest and seek a refund. Tender of less than the full amount of tax liability need not be accepted, *Lal v. West Chester Area School District,* 71 Pa. Commonwealth Ct. 236, 455 A.2d 1240 (1983), and cannot be used as evidence of good faith.

Taxpayers were the authors of their own problem when they decided to circumvent the statutory procedure and seek to have the taxes paid into court. Since this was not a valid alternative and since we have already decided that the trial court had no jurisdiction to enter the October 24, 1981 and October 30, 1984 orders, *Chartiers Valley II,* we do not believe that reliance upon Judge SCHEIB's order is a valid justification to avoid the payment of penalties.

Accordingly, we affirm.

## INTEREST

The trial court has awarded interest on the refunds due and owing to taxpayers as a result of overpayment. That interest began to accrue one year after the Board's assessment disposition and continued until the payment of the refund, February 24, 1983. (Interest was withheld pending the final outcome.) Taxpayers now assert that they are entitled to an award of interest on the monies still being withheld.

In support of their argument, taxpayers cite *Myers v. Department of Transportation,* 496 Pa. 197, 436 A.2d 612 (1981). In *Myers* our Supreme Court said:

> It is generally true that the law of this Commonwealth frowns on an award of compound interest on a debt except where the parties agree to it or a statute expressly authorizes it. Powell v. Allegheny County Retirement Board, 431 Pa. 396, 246 A.2d 110 (1968). However, lawful interest from the time of obtaining the judgment is expressly allowed by statute to the judgment creditor in an action to enforce the judgment.

*Id.* at 201, 436 A.2d at 614. The refund has already been paid to taxpayers and, this not being an action to enforce the judgment, no compound interest need be paid.

Accordingly, we affirm.

## CONSTITUTIONALITY OF SECTION 17 OF THE LAW, 72 P.S. §5452.17

Taxpayers urge a gratuitous challenge to 72 P.S. §5452.17 based upon due process and article 8, section 1 of the Pennsylvania Constitution (the so-called Uniformity Clause). We have previously faced this issue, upholding section 5452.17 on both grounds. *Monongahela Connecting Railroad Co. v. City of Pittsburgh*, 45 Pa. Commonwealth Ct. 474, 406 A.2d 351 (1979).

## CONSTITUTIONALITY OF STATUTORILY PRESCRIBED RATE OF INTEREST

It has long been the law in this Commonwealth that a strong presumption in favor of the constitutionality of statutes exists and that the challenging party bears a very heavy burden of proof. *Hess v. Montgomery County Board of Assessment Appeals*, 75 Pa. Commonwealth Ct. 69, 461 A.2d 333 (1983).

All that taxpayers have done is cite us to eminent domain cases in other jurisdictions that have rejected

the 6% rate of interest in support of their allegation that this rate of interest is confiscatory and in violation of the Just Compensation Clause, Pa. Const., art. 1, §10. This is insufficient to support their burden that their rate of interest is confiscatory and thereby unconstitutional.

Affirmed.

## ORDER IN 2343 C.D. 1986

AND NOW, October 8, 1987, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

## ORDER IN 2475 C.D. 1986

AND NOW, October 8, 1987, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

## ORDER IN 2535 C.D. 1986

AND NOW, October 8, 1987, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.